SHEROD MATHIS v. WILLIAM R. BUFORD.

A leading interrogatory is one that may be answered by yes or no, and suggests the desired answer.

Where it is clear that the verdict was not based upon the answer to a leading interrogatory, the judgment will not be reversed because an objection to the interrogatory was overruled.

Where, in a suit for money had and received, interrogatories to take the deposition of a witness, required him to state whether a certain person paid money to the defendant, and the amount so paid, if any, it was held that the interrogatory was not liable to the objection of being leading.

Appeal from Cherokee. Tried below before the Hon. William W. Morris.

The 11th, 13th and 14th interrogatories to witness Avery, and the answers thereto, were as follows :

Int. 11th. Were you and the friends generally of said Buford, requested to keep a lookout for said money and the thief, and to apprehend the same? and was the said Mathis so requested? and to receive from him, if caught, the said money lost?

Ans. We were ; and the said Mathis was so requested to recover said money of said thief, if caught, which said request was made by Buford of both Mathis and myself, when we were about starting home from California.

Int. 13th. If you state the name of said thief, &c., say whether he had been described to you and said Mathis, so that on sight you and said Mathis would recognize him?

Ans. He had been so described by Buford and Mathis, as to enable me to know him on sight.

Int. 14th. State whether and when you met with said thief, giving his name? and whether said Mathis addressed and recognized him? and whether said Mathis demanded said money

from said thief, as the money of said Buford, as agent of said Buford? and whether said thief acknowledged that he had stolen or taken the money from said Buford? and whether said thief or taker paid over said money to said Mathis, as the money taken from said Buford? and further state the amount so received from said taker or thief by said Mathis, if any he received, giving all the items of conversation that occurred at the time of this transaction, fully and particularly, and tell all you know and your means of knowledge? and whether he promised to pay said Mathis any more of the money taken, at any future time?

Ans. We met with said thief when we left San Francisco, on the first day of March, 1853, on board the steamship San Louis. When we had been out to sea two days, Mathis came to me and told me that he recognized Mr. Smock (the supposed thief) on the boat, and took me on the quarter deck and pointed him out to me, and from the description I had received from Buford, I recognized him myself. Mathis then went to said Smock and made himself known. Smock acknowledged having stolen the gold dust and gold coin from Buford's camp, and proposed to refund it if Mathis would consent for him to proceed on his way homeward. Smock acknowledged that he had stolen Buford's money, and would refund it, or twice the amount, if permitted to proceed home. Mathis demanded the money from Smock, and in the name of Buford. Smock paid over to Mathis in my presence two hundred dollars as a portion of the amount stolen from said Buford. Smock paid him no more money in my presence. Mathis was desirous, when he first recognized Smock, of killing him; but being prevented, he intended or desired to carry him back to California, and requested me to see the Captain and make arrangements to that effect. I did so. Mathis and myself having procured through tickets to New Orleans, wanted to exchange them for tickets back to California, but the Captain refused, and Mathis concluded to let Smock proceed on home, if Smock would

agree to send him the money to Texas, Smock promising to send him five hundred dollars to Rusk, Cherokee County, Texas. After our arrival (Mathis and myself,) at Rusk, Mathis received a letter from Smock, mailed at Philadelphia, stating that he was at that place, had been sick, and had recovered, and was ready to send or forward the said five hundred dollars when Mathis should answer his letter. Mathis came to me with said letter and desired me to read it, (Mathis not being able to read writing,) and asked me to answer said letter. I did so, as he directed, requesting said Smock to procure a draft on some responsible firm in New Orleans, and direct his letter to Mathis, at Rusk, Cherokee County, Texas.— Said letter has not been received by Mathis to my knowledge. When Mathis received the two hundred dollars from Smock, Smock gave him the money in a purse, which Mathis and Smock said belonged to Buford. Mathis lost the purse in New Orleans. Mathis did not receive the money from Smock as agent of Buford. Mathis, after recovering the amount of two hundred dollars from Smock, (whose first name was William,) and the promise of Smock to remit him five hundred dollars more, consented to let Smock proceed on his journey home, and the transaction was to be kept a secret from Buford. The purse was worth from fifty cents to one dollar.

The objections to those interrogatories and answers were as follows :

Defendant objects to the eleventh interrogatory because it is leading, and to the answer because it is not responsive ; to the thirteenth interrogatory because there had been no proof thereof ; and to the 14th interrogatory because the same is leading ; which objections were overruled, &c., &c.

The verdict and judgment were for 201 dollars.

*Anderson* and *Hood*, for appellant.

*J. Everett*, for appellee.

LIPSCOMB, J. This suit was brought to recover money be-
longing to the plaintiff below, against the appellant, received
by him. It is alleged that the money had been taken from the
plaintiff, in California, by one Smock, and that it was after-
wards delivered to the defendant in the Court below, Mathis,
the appellant in this Court. There was a judgment, on the
verdict of the jury, for the plaintiff; a motion for a new trial,
which was overruled; and defendant appealed.

The error assigned, on which appellant asks a reversal of
the judgment, is the overruling exceptions of the defendant to
the reading of the answers of the witness Avery to interroga-
tories 11th, 13th and 14th, in evidence, to the jury.

The objection to the answer to the 11th interrogatory was,
that the interrogatory was a leading one to the witness. It
is as follows : " Were you and the friends generally of said
" Buford requested to keep a look out for said money-thief, and
" to apprehend the same ? and was the said Mathis so request-
" ed, and to receive from him, if caught, the said money lost ?"
It has been a difficult question to establish a fixed rule for de-
termining whether a question is a leading one or not, and one
that strikes me should be left in a great degree to the discretion
of the Court, particularly when the evidence is oral, before the
Court and jury; but when it is taken by interrogatories, the
discretion should be more restricted. When a witness is giving
evidence before the Court and the jury, much may be collected
from his manner to indicate, whether he was a willing witness,
ready to respond in a way most to promote the interest of the
party calling him. If, however, he clearly manifests an unwilling-
ness, to testify in favor of the party calling him, I believe the
Court would be sustained in giving much latitude, in the man-
ner in which the question was framed. This, however, being
evidence taken by interrogatories, we must confine ourselves
to the generally acknowledged rule on the subject, although it
may not be altogether satisfactory. This rule is. " A leading
question is one that may be answered in the affimative or

negative, and suggests the desired answer." (See Abel v. Sparks, 6 Tex. R. 349.) Now, this rule is perhaps the best that could be laid down, and yet it is obvious that it is far from being satisfactory on principle. It must avoid suggesting the desired answer, when, to an intelligent witness, almost every material question would of itself suggest the answer, the propounder desired should be given to it ; and it is to me exceedingly doubtful whether the objection to putting the question in this form has been of any practical utility, in arriving at the truth. It is however sanctioned by all the elementary writers on evidence, American and foreign. (See Greeleaf, Vol. 1, Sec. 435 ; 2 Pothier, 202, 203 ; 1 Starkie on Ev. 149.) We are therefore not at liberty to disregard it.

To test the interrogatory excepted to in this case, by the rule we have stated, it was certainly not in conformity thereto, and the answer to it ought to have been excluded from the jury, and if this was the evidence on which the verdict of the jury mainly rested, we would reverse the judgment.

But it is clear, that the verdict was not based upon the answer to this interrogatory. It proved nothing, of itself, to establish the right of the plaintiff, nor the liability of the defendant. His right to recover rested upon the fact, that the defendant had received his money, and had not paid it over to him. The plaintiff, however, imagined that it was necessary that the answer should be in evidence by way of conducing to proof of the only essential fact; and he thought too, that it was necessary, as preliminary proof, that it should be shown, who started to California, who was the leader, who paid the expenses of the journey, who supplied the implements for working the mines, how reimbursement was to be made, that he had lost money at a particular camp, who was suspected of being the thief, who was requested to be on the look out for the thief and money, all of which might have found place in his own journal of the tour, but had really no more to do with his rights against the defendant, than the nursery tales

of old Mother Goose or Jack the Giant Killer. What occurred on board the steamer San Louis was sufficient for his purpose, and all the other evidence might well have been striken out, and perhaps ought to have been. The evidence of Avery, given in answer to the 14th interrogatory, so far as it proves the acknowledgment of Smock, that he had taken the plaintiff's money, and that he saw him pay over to the defendant two hundred dollars thereof, I regard as legitimate testimony, and not drawn out by a leading question, although the answer is incumbered with much that ought not to have been there. This was sufficient evidence to sustain the verdict; and with it, it is not possible, on any reasonable hypothesis, that the verdict could have been different. The judgment is therefore affirmed.

Judgment affirmed.