[No. 2076.]

JOSE MARIA RANGEL v. THE STATE.

1. THEFT—INDICTMENT—ARREST OF JUDGMENT.—See the statement of the
case for the substance of an indictment *held* sufficient to charge the of-
fense of theft; wherefore the motion in arrest of judgment, alleging the
insufficiency of the indictment to negative the consent of the owners to
the taking, was properly overruled.

2. EVIDENCE—ACCOMPLICES, under the common law rule, were, before con-
viction and sentence, competent witnesses for or against each other. The
change in the rule by the Code of this State does not affect the compe-
tency of such accomplices to testify for the State.

3. SAME—LEADING QUESTIONS are such as may be answered by yes or no.
"Was this (exhibiting a fac simile) the brand that was on the animal
killed?" was clearly a leading question, and in permitting it the trial
court erred under the circumstances of this case.

4. SAME—CHARGE OF THE COURT.—See the opinion *in extenso* for a state of
proof to which the trial court, having failed in its charge to apply the
law controlling accomplice testimony, erred in refusing a requested in-
struction upon that subject.

APPEAL from the District Court of Cameron. Tried below be-
fore the Hon. J. C. Russell.

This was a conviction for theft had under an indictment, the
charging part of which reads as follows: " * * * Jose Ma.
Rangel, on or about the fifteenth day of July, A. D. 1886, in
Cameron county, Texas, did fraudulently take and steal from
and out of the possession of, and without the consent of, John
Kennedy, then and there holding same for the Kennedy Pasture
Company, one certain head of neat cattle, then and there the
property of said Kennedy Pasture Company, and without the
consent of the said Kennedy Pasture Company, with intent to
deprive said John Kennedy and said Kennedy Pasture Company
of the value thereof, and to appropriate the same to the use and
benefit of him, the said Jose Ma. Rangel, against the peace and
dignity of the State." The penalty imposed by the jury was a
term of two years in the penitentiary.

John G. Kennedy was the first witness for the State. He tes-
tified that he lived on the Parra ranch in Nueces county, Texas.
The defendant had been in his employ as a farmer, working in

a field in the pasture known as the "Portrero Cortado." That Pasture was owned by the Kennedy Pasture Company, which company was composed of T. M. Kennedy, James Kennedy, John Kennedy and Mifflin Kennedy. The defendant had Jose Tobias, Juan Bravo and Atenogenes Segura in his employ, and none of them had any thing to do with the company's cattle business. The witness was the manager of the concern, and had exclusive charge, care and control of the cattle. Mifflin Kennedy was at the north on the day of the alleged offense. Tom Kennedy was then absent, and James Kennedy was dead. The defendant had no authority to kill any of the cattle belonging to the Kennedy Pasture Company, and witness had no personal knowledge of his ever having killed any of those cattle. Tobias first reported to witness the killing of the animal described in the indictment. Witness recieved similar information from one Reyes Cuevas, and thereupon caused the arrest of defendant. The arrest was made about the eighteenth day of July. Witness went to the place of the theft, and thence to the residence of defendant, about four miles from the place of the theft, about the twenty-fourth day of July. "The place where the theft was committed is in this county."

Jose Tobias was the next witness for the State. He testified, in substance, that he lived on the La Parra ranch, which belonged to Captain Kennedy, and was in the employ of defendant, who was farming on that ranch. Bravo and Segura were also in the defendant's employ. On the day named in the indictment, the defendant ordered Bravo and Segura to go to the pasture of Los Indios, which belonged to the Kennedy pasture, kill a calf, bury its bones and hide, and bring its carcass to his, defendant's, camp. Bravo and Segura left defendant's camp at dusk and returned next day with the meat. They put the head in barbecue, and laid the meat aside. Witness did not know what they did with the hide, unless they buried it as directed. Defendant said that if the matter was reported to Kennedy, he would kill the man who reported it. Defendant's camp was about four miles from his house, and it was at the camp that he gave the order to Bravo and Segura to kill the calf. He did not tell them to kill a calf of any particular age, color or sex, but to kill a calf belonging to Kennedy. Witness knew that the calf killed by Bravo and Segura was Kennedy's calf only by what Bravo told him. He, witness, remained at the camp until the meat was eaten up, and then left, going to Kennedy's place and

telling him. Defendant went to his home after he ordered Bravo and Segura to kill the calf, bury its hide, etc., and returned to the camp on the next day, after the calf had been reduced to beef.

Juan Bravo testified, for the State, substantially as did the witness Tobias. He drew a brand which he said was the Kennedy brand. The prosecuting attorney then showed the witness a copy of Kennedy's brand, and asked him if it was the same brand that was on the animal which he and Segura killed, and he replied that it was. He stated emphatically that the calf killed belonged to the Kennedys, and that he and Segura buried its hide and bones, and took the meat to camp as directed by Rangel. The witness was shown to be under indictment for the same offense.

A. Segura testified, for the State, in substance, that he did not know Rangel, Bravo and Tobias. He then admitted that he knew them by sight. He then testified that he, Bravo and Tobias worked for Rangel. He further testified that Rangel ordered him and Bravo to get up a calf belonging to the Kennedys, that it might be killed. Rangel claimed to have authority from the Kennedys to get the calf. Witness and Bravo drove the calf to the camp and Rangel killed it by cutting its throat. Witness and Bravo buried the hide, and Tobias buried the bones. A large part of the meat was eaten while the witness was with Rangel. Witness did not know how long after the calf was killed Tobias remained on the place, but he remained as long as the meat lasted. The witness was shown to be under indictment for this same offense.

Sheriff Brito testified, for the State, that, in response to a telegram from Kennedy, he went to Carnestolendas and arrested the defendant, Bravo and Segura. The latter appeared to be afraid of being killed if he pointed out the place where the bones and hide were buried. He finally took witness to a creek. After digging four holes on the bank, he found a piece of hide which he said belonged to the hide of the Kennedy calf that was killed. Witness saw no brand on the piece of hide. Witness took Tobias with him to make the arrest. Tobias pretended to know the hiding places of the hide and bones, but failed to find them. Tobias had but recently left the defendant's service.

The State closing, the defendant introduced several witnesses who testified that they had known defendant for many years,

and that he had always sustained an irreproachable character for honesty.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Objections to the indictment contained in appellant's motion in arrest of judgment were not maintainable, and it was not error to overrule said motion.

It was not error to permit the State, over objections of defendant, to introduce as witnesses against him the two particeps criminis, Juan Bravo and Atenogenes Segura, who were charged with the same offense by separate indictments. Parties charged as principals, accomplices, or accessories, whether in the same indictment or different indictments, can not be introduced as witnesses for one another. This is statutory. (Code Crim. Proc., Art. 731.) But we have no statute that parties so situated may not be introduced as witnesses *against* one another. In so far as the prosecution is concerned, the rule at common law with regard to the admissibility of such evidence is unchanged by our statute. "At common law, accomplices, under certain exceptions, before conviction and sentence, were competent witnesses either for or against each other, and this rule has not been so changed by the code of this State as to disqualify such witnesses from testifying in behalf of the State." (Meyers v. The State, 3 Texas Ct. App., 8.)

Whilst the witness Juan Bravo was testifying, the district attorney handed witness a paper purporting to be a certificate of the brand of the Kennedy Pasture Company, the alleged owner of the animal in question—a representation of the brand being contained in said certificate. After witness had examined the same, the district attorney, for the purpose of identifying this brand with the one on the stolen animal, asked said witness the following question, viz: "Is this the brand that was on the animal killed?" Defendant, by counsel, objected because the question was leading, but the court overruled the objection and permitted the witness to answer.

"A leading question is one which may be answered by yes or no, and suggests the desired answer." (Mathis v. Buford, 17

Texas, 152; 1 Whart. Ev., 2 ed., sec. 499; Tinsley v. Carey, 26 Texas, 350; Kennedy v. The State, 19 Texas Ct. App., 620.) Tested by the rule, under the peculiar circumstances shown in connection therewith, the question was clearly leading, and the court erred in overruling the objection.

The testimony in the case tended to implicate the State's witness Tobias as a particeps criminis in the theft of the animal. The witness Segura says: "Tobias himself buried the bones (of the stolen calf) inside the *jacal*." * * * "I do not know how long Tobias remained. He certainly remained until the meat was finished."

In the sixth paragraph of his charge to the jury, the court properly instructs them with regard to the necessity of corroboration in so far as the accomplice testimony of the witnesses Segura and Bravo was concerned, but does not charge the necessity of corroboration with regard to the testimony of Tobias, in case the jury should conclude from the evidence that this witness also was a particeps criminis. Upon this omission of the court defendant's counsel based a special exception to the charge, and again called the error to the attention of the court in the motion for a new trial. It was an essential part of the law of the case that the jury should have been properly instructed upon this phase of the evidence, in as much as this witness was corroborating the testimony of the other accomplices.

For the errors indicated, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

Opinion delivered January 8, 1887.