## PECOS & N. T. RY. CO. v. STOKER.

(Court of Civil Appeals of Texas. Amarillo. Dec. 2, 1911. Rehearing Denied Dec. 29, 1911.)[1]

1. APPEAL AND ERROR (§ 690*)—BILL OF EX-CEPTIONS—NECESSITY.

In the absence of a bill of exceptions show-ing answers to questions made the subject of assignments of error, the propriety of the ques-tions will not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2899; Dec. Dig. § 690.*]

[1] Filed in the Court of Civil Appeals at Ft. Worth February 9, 1911, and transferred to this court by order of the Supreme Court of Texas July 1, 1911.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

2. MASTER AND SERVANT (§ 42*)—SERVICES—DAMAGES FOR BREACH.

Plaintiff agreed with defendant railway company to plow certain fireguards whenever directed, and within a stipulated time, plaintiff to hold himself ready to plow them at any time set. Defendant permitted plaintiff to plow some of them and paid him, but upon the expiration of the time set refused to allow plaintiff to finish. Held, that while ordinarily a discharged servant is bound to seek other employment, and his measure of damages is the difference between the sum earned by him and the sum he would have received but for the breach, plaintiff in this case was not required to seek other employment, for the contract was not one of hiring for a specified length of time, but for the performance of certain work within a time set, during which time plaintiff was to keep himself in readiness at all times.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 54–56; Dec. Dig. § 42.*]

3. MASTER AND SERVANT (§ 40*)—SERVICES—ACTIONS—DAMAGES.

Where a railroad company engaged plaintiff to plow its fireguards within a stipulated time, the plowing to be done as the railroad company directed, plaintiff keeping himself and his teams in readiness at all times, and the railroad breached the contract, it was entitled to no reduction in damages because the teams had been idle, and hence evidence of their value was immaterial.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 40.*]

Appeal from Lubbock County Court; John R. McGee, Judge.

Action by R. A. Stoker against the Pecos & Northern Texas Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Madden, Trulove & Kimbrough and Roscoe Wilson, for appellant. Bean & Klett, for appellee.

PRESLER, J. Appellee, R. A. Stoker, instituted this suit in the county court of Lubbock county, Tex., against appellant, the Pecos & Northern Texas Railway Company, to recover alleged damages for the breach of an alleged contract for the plowing and replowing of certain fireguards along and on each side of appellant's railroad.

Appellee alleged that on or about the ———— day of January, 1910, E. E. Roos, track superintendent, and duly authorized agent of the appellant, did make and enter into a certain contract and agreement with appellee, whereby appellee contracted and agreed to plow certain fireguards along and on each side of appellant's line of railroad, then in the course of construction, between the town of Lubbock, in Lubbock county, and a place called Caprock, and between the place called Junction and the town of La Mesa, said guards to be composed of or to comprise four furrows adjacent to each other and each furrow to be about ten inches wide; that said Roos, for appellant, contracted and agreed to pay appellee for said plowing the sum of 75 cents per running mile of single furrow or $6 per running mile of rail-

road; that said appellee entered upon the work of plowing said guards, and that when appellee had plowed the fireguards between the town of Lubbock and Caprock and between Junction and the town of Tahoka, being in all 372 miles of single furrow, said Roos did approve and accept said work, and draw a voucher on appellant for the sum of $150 in favor of appellee, which was paid by appellant to appellee; that at said time said Roos told appellee that he was not ready to have the guards plowed from Tahoka to La Mesa, and that he would lay appellee off for a short time, until the track could be laid between Tahoka and La Mesa, but for appellee to hold himself in readiness to do said plowing, and same should be done not later than August, 1910.

Appellee further alleged that at the time of the discontinuing of the plowing as above stated, and in the month of February, 1910, the said Roos for appellant did make and enter into another and further agreement and contract with appellee, by the terms of which it was mutually agreed that on demand of the said Roos at any time made not later than August, 1910, appellee should finish the plowing of the guards between Tahoka and La Mesa, and should replow the guards between Lubbock and Caprock, and between Junction and Tahoka, for which said plowing between Tahoka and La Mesa appellee was to be paid 75 cents per mile per single furrow, and for the replowing appellee was to be paid the sum 50 cents per mile per single furrow; that appellee was ready, willing, and able to perform said contract, and, relying upon the agreement made with said Roos, held himself in readiness to perform said contract until he filed this suit in August, 1910; that appellant without any cause on the part of appellee breached said contract and notified appellee on or about the ———— day of July, 1910, that his services were not needed to do said plowing and replowing, and that same had been done by others; that the contract called for the plowing of 280 miles of single furrow from Tahoka to La Mesa at 75 cents per mile and the replowing of 372 miles of single furrow between Lubbock and Caprock and between Junction and Tahoka at 50 cents per mile. Appellee further alleged that since the institution of the suit appellant had paid him $129, the balance due for the plowing actually done by appellee, but had refused to pay appellee anything for the breach of said contract. Appellee prayed for $396 damages.

Appellant filed its amended original answer, and, in addition to its general demurrer and general denial, specially alleged that, if it ever entered into any contract or agreement with appellee for plowing fireguards along and on each side of any of its lines of railroad, such contract or agreement was

only for the plowing of the fireguards along and on each side of its railroad between the town of Lubbock and Caprock and between Junction and Tahoka, and that it had paid said appellee in full for said work and appellee accepted said payment in full settlement, satisfaction, and discharge of the amount due appellee under said contract or agreement.

A trial by a jury resulted in a verdict and judgment for plaintiff against defendant for the sum of $270, and costs of court, and from this judgment defendant appeals.

[1] Appellant's first assignment of error is as follows: "The trial court erred in allowing plaintiff's attorneys on direct examination to ask plaintiff, R. A. Stoker, while said Stoker was on the witness stand, over defendant's objections, the following questions, and in permitting the answers thereto to go in evidence to the jury, to wit: 'Q. Bob, if you plowed 18 miles per day at 75 cts per mile, you would make $13.50 less your expenses, which you said were $3.50 per day, wouldn't you? A. Yes, sir. Q. And it would take you about 15½ or 16 days to plow the 280 miles from Tahoka to La Mesa, wouldn't it? A. Yes, sir. Q. And your profit on this work would be 15½ times the difference between $13.50 and $3.50 or 15½ times $10, making $155 profit, wouldn't it? A. Yes, sir. Q. Now, on the replowing of the fireguards from Lubbock to the Caprock and from Junction to Tahoka, if you plowed 22 miles per day at 50 cents per mile, you would make $11, less your, $3.50, expenses, wouldn't you? A. Yes, sir. Q. And it would take you about 17 days to do this replowing, and you would make 17 times the difference between $11 and $3.50 or $7.50, which would make $127.50 profits, wouldn't you? A. Yes, sir.' The objection of the defendant being that said questions were leading and suggested to the witness the desired answer. And said court also erred in admitting the answers of said witness to the foregoing questions, over defendant's objections, because the same were inadmissible as more fully shown in defendant's bill of exceptions Nos. 1–5."

On examination of the bills of exception referred to, we find no answers set out as having been made to the questions complained of, and it is fundamental that an assignment based upon a bill of exception must be confined to the matters set out in such bill. In this condition of the record (i. e., the bills of exception showing no answers), we do not consider that it is incumbent upon us to consider said assignments as we would be unable to determine from the record thus presented, whether there was such manifest abuse of discretion by the trial court as would constitute reversible error or that if the interrogatories complained of be held to be leading, that they influenced the answers, and that injury resulted to appellant therefrom. Said assignment is therefore overruled. Mathis v. Buford, 17 Tex. 152; 8 Enc. of Ev. p. 168.

[2] Appellant, under its second assignment of error, complains of the action of the court in refusing to allow it, over the objection of appellee, to ask appellant whether or not he had sought other work to try to reduce his loss occasioned by the breach of the contract, and contends that appellee could only be entitled to recover the amount of his contract less such amount as he could have earned elsewhere during such period by the exercise of ordinary diligence, and as the same question is raised under appellant's third assignment of error, complaining of the action of the court in refusing to give defendant's special charge No. 4, said assignments will be here considered together. The special charge referred to and refused is as follows: "If you believe from a preponderance of the evidence that the defendant made with plaintiff the contract as alleged by plaintiff, and wrongfully refused to allow or have plaintiff perform said contract, and thereby deprived said plaintiff of the gains and profits, if any, of such contract, it was nevertheless the duty of plaintiff not to remain idle, but to use every reasonable effort to procure other employment or work, and you gentlemen of the jury, should deduct from such amount of profits or gains, if any, that you find plaintiff entitled to as damages for the breach of the contract by defendant, such sums as the plaintiff earned in any other employment, and also any further sums which in your judgment he might have earned by due and reasonable diligence." The principle of law and the rule contended for under these assignments is no doubt correct where the contract of hiring is for a stated period, and is wrongfully breached by the employer before the end of the contract term of service, and it is held by an unbroken line of decisions in this, as well as other states, that the discharged servant cannot sit supinely until the expiration of his term of hire, and then sue and recover his wages for the entire time. He must discharge the duty imposed by law in every case of suffered damage. That is to say, he must exercise reasonable care to find other employment, and the measure of his damage is the difference between the sum earned by him in the exercise of reasonable care and the sum he would have received but for the breach complained of. The policy and purpose of the law in such case is to compensate the servant for the damage he suffered as the proximate result of the breach. Wood on Master and Servant, p. 125. But we do not think the rule contended for is applicable to this case. The evidence showed that appellee, under his contract with appellant, agreed to do certain specified work, which was to be completed as a whole, and that he was entitled to recover compensation

therefor, and that the contract of hiring was not a continuous employment for any definite length of time by the week, month, or year, but the work was to be performed at any time from January to August, 1910, and that appellee had agreed to hold himself and teams in readiness to do the work for appellant on its demand, not later than August 1, 1910, and that appellant breached the contract about the 1st of August by discharging appellee, having in the meanwhile, in violation of its said contract, employed others to do the work, and notified appellee that his services would not be required for the first time on about the date of the expiration of the limit fixed for doing said work by appellee. We are unable to see that there was any legal obligation resting upon appellee prior to his discharge to seek other employment, or that he could have done so consistent with his contract with appellant to hold himself and teams in readiness to do appellant's work on its demand at any time before August 1, 1910. We are also unable to see how the question of whether appellee sought employment or not or could have obtained same if he had sought it with reasonable diligence after his discharge could be material in this case. This is not an action for wages or salary, but for damage as compensation for the injury claimed to have been done appellee in the wrongful breach of its contract by appellant, and for the loss of his profit occasioned thereby. Appellee, having filed suit immediately after his discharge, and having sought to recover only such compensation, was not required to seek other employment. His right to recover damage, if any he had suffered, accrued on the day of his discharge. He could not then have lessened the damage by taking other employment because his full time had expired about the date of the discharge, and we think, as before stated, that the terms of the contract of his employment precluded appellee from taking other employment before the discharge, because he had agreed to hold himself and his teams in readiness to do the work of appellant as contracted. We therefore conclude said assignments present no reversible error, and should be overruled. Porter et al. v. Burkett et al., 65 Tex. 385; Efron et al. v. Clayton, 35 S. W. 424; Express Co. v. Walters, 42 Tex. Civ. App. 355, 93 S. W. 496.

[3] Appellant under its fourth assignment of error complains of the action of the court in refusing to allow it to ask appellee, when on the witness stand, "What was the value of the use of the teams and implements it would have taken to perform the alleged contract," and contends that even if appellee had a contract with appellant as alleged, and appellant breached said contract and thereby damaged appellee, it would be right and equitable to deduct from such damage the value of the use of the teams and implements it would have taken to perform the contract, and, as they were not used in the performance of the contract, they were free to be used in any other way, and that there was no wear and tear on the implements; that had plaintiff performed the work under said contract and received the total contract price, to figure the profits made by him, it would have been necessary to allow for the value of the use of the teams and implements used in the performance of said contract and to have deducted that amount, together with other items of expense, from the contract price; that this would have been his profit, and that under the law he can only recover the natural and probable profits of his contract in an action for the breach of the same. In view of the evidence in this case showing that appellee had contracted to hold himself and teams in readiness to do the work of appellant during the period specified, we cannot agree with the contention of appellant that they were free to be used in any other way, and that appellee in arriving at an estimate of his profit is properly chargeable with the value of the use of such teams and implements during the period of said contract. We therefore conclude that said inquiry was immaterial to any legitimate issue in this case. It further appearing from the evidence that the witness had testified fully as to the expense he would have incurred in doing the work and the profits he would have made had he not been discharged and would be entitled to recover compensation for the loss inflicted on him by the breach of his said contract, we are of the opinion said assignment should be overruled. Porter et al. v. Burkett et al., 65 Tex. 386.

Appellant, under its fifth assignment of error, complains of the charge of the court, wherein the jury is instructed that "no allowance is to be made to defendant for the expense he would have incurred in performance of the contract," and contends that the meaning of said charge is not clear and was likely to lead the jury to believe that the "expense of performance" were not to be considered; and because said charge is inconsistent with the remaining part of said paragraph and the special charges given on damages, we are of the opinion that the court's charge, as a whole, together with appellant's special charge given, present no reversible error, and said assignment is therefore overruled. I. & G. N. Ry. Co. v. Von Hoesen, 99 Tex. 646, 92 S. W. 798.

Appellant, under its sixth assignment of error, contends that the only evidence of damage suffered by appellee in this case was admitted in reply to questions that were leading and suggestive, propounded to appellee by his own attorneys, to which appellant objected and reserved bills of exception. We find the bills of exception referred to are

the same upon which appellant's first assignment of error is based, and do not show any answers whatever as made thereto, and if we were required to look to the statement of facts, the same being in narrative form, we would be unable to determine whether or not the evidence complained of and included in appellant's statement under his sixth assignment, was in response to the alleged leading questions. Upon the whole evidence, we are unable to hold that the verdict of the jury is not sufficiently supported, or that the same is excessive. We therefore conclude that said judgment should be in all things affirmed, and it is accordingly so ordered.