## WASHINGTON *v.* TEXAS.

No. 649.   Argued March 15–16, 1967.—Decided June 12, 1967.

*Charles W. Tessmer* argued the cause for petitioner. With him on the brief was *Emmett Colvin, Jr.*

*Howard M. Fender,* Assistant Attorney General of Texas, argued the cause for respondent. With him on the brief were *Crawford C. Martin,* Attorney General, *George Cowden,* First Assistant Attorney General, *Robert Lattimore,* Assistant Attorney General, and *A. J. Carubbi, Jr.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

We granted certiorari in this case to determine whether the right of a defendant in a criminal case under the

Sixth Amendment[1] to have compulsory process for obtaining witnesses in his favor is applicable to the States through the Fourteenth Amendment,[2] and whether that right was violated by a state procedural statute providing that persons charged as principals, accomplices, or accessories in the same crime cannot be introduced as witnesses for each other.

Petitioner, Jackie Washington, was convicted in Dallas County, Texas, of murder with malice and was sentenced by a jury to 50 years in prison. The prosecution's evidence showed that petitioner, an 18-year-old youth, had dated a girl named Jean Carter until her mother had forbidden her to see him. The girl thereafter began dating another boy, the deceased. Evidently motivated by jealousy, petitioner with several other boys began driving around the City of Dallas on the night of August 29, 1964, looking for a gun. The search eventually led to one Charles Fuller, who joined the group with his shotgun. After obtaining some shells from another source, the group of boys proceeded to Jean Carter's home, where Jean, her family and the deceased were having supper. Some of the boys threw bricks at the house and then ran back to the car, leaving petitioner and Fuller alone in front of the house with the shotgun. At the sound of the bricks the deceased and Jean Carter's mother rushed out on the porch to investigate. The shotgun was fired by either petitioner or Fuller, and the

---

[1] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

[2] "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

deceased was fatally wounded. Shortly afterward petitioner and Fuller came running back to the car where the other boys waited, with Fuller carrying the shotgun.

Petitioner testified in his own behalf. He claimed that Fuller, who was intoxicated, had taken the gun from him, and that he had unsuccessfully tried to persuade Fuller to leave before the shooting. Fuller had insisted that he was going to shoot someone, and petitioner had run back to the automobile. He saw the girl's mother come out of the door as he began running, and he subsequently heard the shot. At the time, he had thought that Fuller had shot the woman. In support of his version of the facts, petitioner offered the testimony of Fuller. The record indicates that Fuller would have testified that petitioner pulled at him and tried to persuade him to leave, and that petitioner ran before Fuller fired the fatal shot.

It is undisputed that Fuller's testimony would have been relevant and material, and that it was vital to the defense. Fuller was the only person other than petitioner who knew exactly who had fired the shotgun and whether petitioner had at the last minute attempted to prevent the shooting. Fuller, however, had been previously convicted of the same murder and sentenced to 50 years in prison,[3] and he was confined in the Dallas County jail. Two Texas statutes provided at the time of the trial in this case that persons charged or convicted as coparticipants in the same crime could not testify for one another,[4] although there was no bar to their testi-

---

[3] See *Fuller* v. *State*, 397 S. W. 2d 434 (Tex. Crim. App. 1966).

[4] "Persons charged as principals, accomplices or accessories, whether in the same or by different indictments, can not be introduced as witnesses for one another, but they may claim a severance, and if one or more be acquitted they may testify in behalf of the others." Tex. Pen. Code, Art. 82.

"Persons charged as principals, accomplices or accessories, whether in the same or different indictments, cannot be introduced as wit-

fying for the State.[5]  On the basis of these statutes the trial judge sustained the State's objection and refused to allow Fuller to testify.  Petitioner's conviction followed, and it was upheld on appeal by the Texas Court of Criminal Appeals.  400 S. W. 2d 756.  We granted certiorari.  385 U. S. 812.  We reverse.

## I.

We have not previously been called upon to decide whether the right of an accused to have compulsory process for obtaining witnesses in his favor, guaranteed in federal trials by the Sixth Amendment, is so fundamental and essential to a fair trial that it is incorporated in the

nesses for one another, but they may claim a severance; and, if any one or more be acquitted, or the prosecution against them be dismissed, they may testify in behalf of the others." Tex. Code Crim. Proc., Art. 711 (1925).

These statutory provisions were apparently repealed by implication by Art. 36.09 of the Texas Code of Criminal Procedure of 1965, which became effective after petitioner's trial.  Article 36.09 provides that "Two or more defendants who are jointly or separately indicted or complained against for the same offense or an offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the State . . . ."

Counsel have cited no statutes from other jurisdictions, and we have found none, that flatly disqualify coparticipants in a crime from testifying for each other regardless of whether they are tried jointly or separately.  To be distinguished are statutes providing that one of two or more defendants tried jointly may, if the evidence against him is insufficient, be entitled to an immediate acquittal so he may testify for the others.  These statutes seem designed to allow such joint defendants to testify without incriminating themselves.  See, e. g., Ala. Code, Tit. 15, § 309 (1958); Alaska Code Crim. Proc. § 12.20.060 (1962); Kan. Gen. Stat. Ann. § 62–1440 (1964).

[5] *Rangel v. State,* 22 Tex. Ct. App. 642, 3 S. W. 788 (1887).

Due Process Clause of the Fourteenth Amendment.[6] At one time, it was thought that the Sixth Amendment had no application to state criminal trials.[7] That view no longer prevails, and in recent years we have increasingly looked to the specific guarantees of the Sixth Amendment to determine whether a state criminal trial was conducted with due process of law. We have held that due process requires that the accused have the assistance of counsel for his defense,[8] that he be confronted with the witnesses against him,[9] and that he have the right to a speedy[10] and public[11] trial.

The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States. This Court had occasion in *In re Oliver,* 333 U. S. 257 (1948), to describe what it regarded as the most basic ingredients of due process of law. It observed that:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." 333 U. S., at 273 (footnote omitted).

---

[6] "[A] provision of the Bill of Rights which is 'fundamental and essential to a fair trial' is made obligatory upon the States by the Fourteenth Amendment." *Gideon* v. *Wainwright,* 372 U. S. 335, 342 (1963).

[7] See *West* v. *Louisiana,* 194 U. S. 258, 264 (1904).

[8] *Gideon* v. *Wainwright,* 372 U. S. 335 (1963).

[9] *Pointer* v. *Texas,* 380 U. S. 400 (1965).

[10] *Klopfer* v. *North Carolina,* 386 U. S. 213 (1967).

[11] *In re Oliver,* 333 U. S. 257 (1948).

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

## II.

Since the right to compulsory process is applicable in this state proceeding, the question remains whether it was violated in the circumstances of this case. The testimony of Charles Fuller was denied to the defense not because the State refused to compel his attendance, but because a state statute made his testimony inadmissible whether he was present in the courtroom or not. We are thus called upon to decide whether the Sixth Amendment guarantees a defendant the right under any circumstances to put his witnesses on the stand, as well as the right to compel their attendance in court. The resolution of this question requires some discussion of the common-law context in which the Sixth Amendment was adopted.

Joseph Story, in his famous Commentaries on the Constitution of the United States, observed that the right to compulsory process was included in the Bill of Rights in reaction to the notorious common-law rule that in cases of treason or felony the accused was not allowed to introduce witnesses in his defense at all.[12] Although

---

[12] 3 Story, Commentaries on the Constitution of the United States §§ 1786–1788 (1st ed. 1833).

the absolute prohibition of witnesses for the defense had been abolished in England by statute before 1787,[13] the Framers of the Constitution felt it necessary specifically to provide that defendants in criminal cases should be provided the means of obtaining witnesses so that their own evidence, as well as the prosecution's, might be evaluated by the jury.

Despite the abolition of the rule generally disqualifying defense witnesses, the common law retained a number of restrictions on witnesses who were physically and mentally capable of testifying. To the extent that they were applicable, they had the same effect of suppressing the truth that the general proscription had had. Defendants and codefendants were among the large class of witnesses disqualified from testifying on the ground of interest.[14] A party to a civil or criminal case was not allowed to testify on his own behalf for fear that he might be tempted to lie. Although originally the disqualification of a codefendant appears to have been based only on his status as a party to the action, and in some jurisdictions co-indictees were allowed to testify for or against each other if granted separate trials,[15] other jurisdictions came to the view that accomplices or co-indictees were incompetent to testify at least in favor of each other even at separate trials, and in spite of statutes making a defendant competent to testify in his own be-

---

[13] By 1701 the accused in both treason and felony cases was allowed to produce witnesses who could testify under oath. See 2 Wigmore, Evidence § 575, at 685–686 (3d ed. 1940).

[14] See generally 2 Wigmore §§ 575–576 (3d ed. 1940). We have discussed elsewhere the gradual demise of the common-law rule prohibiting defendants from testifying in their own behalf. See *Ferguson* v. *Georgia*, 365 U. S. 570 (1961).

[15] See 2 Wigmore § 580, at 709–710 (3d ed. 1940); *Henderson* v. *State*, 70 Ala. 23, 24–25 (Dec. Term 1881); *Allen* v. *State*, 10 Ohio St. 287, 303 (Dec. Term 1859).

half.[16]  It was thought that if two persons charged with the same crime were allowed to testify on behalf of each other, "each would try to swear the other out of the charge." [17]  This rule, as well as the other disqualifications for interest, rested on the unstated premises that the right to present witnesses was subordinate to the court's interest in preventing perjury, and that erroneous decisions were best avoided by preventing the jury from hearing any testimony that might be perjured, even if it were the only testimony available on a crucial issue.[18]

The federal courts followed the common-law restrictions for a time, despite the Sixth Amendment.  In *United States* v. *Reid,* 12 How. 361 (1852), the question was whether one of two defendants jointly indicted for murder on the high seas could call the other as a witness.  Although this Court expressly recognized that the Sixth Amendment was designed to abolish some of the harsh rules of the common law, particularly including the refusal to allow the defendant in a serious criminal case to present witnesses in his defense,[19] it held that the rules of evidence in the federal courts were those in force in the various States at the time of the passage of the Judiciary Act of 1789, including the disqualification of defendants indicted together.  The holding in *United States* v. *Reid* was not satisfactory to later generations, however, and in 1918 this Court expressly overruled it,

---

[16] See *Foster* v. *State,* 45 Ark. 328 (May Term 1885); *State* v. *Drake,* 11 Ore. 396, 4 Pac. 1204 (1884).  Both cases have been overturned by statute.  Ark. Stat. Ann. § 43–2017 (1947); Ore. Rev. Stat. § 139.315 (1965).

[17] *Benson* v. *United States,* 146 U. S. 325, 335 (1892).

[18] "Indeed, the theory of the common law was to admit to the witness stand only those presumably honest, appreciating the sanctity of an oath, unaffected as a party by the result, and free from any of the temptations of interest.  The courts were afraid to trust the intelligence of jurors." *Benson* v. *United States,* 146 U. S. 325, 336 (1892).

[19] 12 How., at 363–364.

refusing to be bound by "the dead hand of the common-law rule of 1789," and taking note of "the conviction of our time that the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury or by the court . . . ." *Rosen* v. *United States*, 245 U. S. 467, 471.

Although *Rosen* v. *United States* rested on nonconstitutional grounds, we believe that its reasoning was required by the Sixth Amendment. In light of the common-law history, and in view of the recognition in the *Reid* case that the Sixth Amendment was designed in part to make the testimony of a defendant's witnesses admissible on his behalf in court, it could hardly be argued that a State would not violate the clause if it made all defense testimony inadmissible as a matter of procedural law. It is difficult to see how the Constitution is any less violated by arbitrary rules that prevent whole categories of defense witnesses from testifying on the basis of *a priori* categories that presume them unworthy of belief.

The rule disqualifying an alleged accomplice from testifying on behalf of the defendant cannot even be defended on the ground that it rationally sets apart a group of persons who are particularly likely to commit perjury. The absurdity of the rule is amply demonstrated by the exceptions that have been made to it. For example, the accused accomplice may be called by the prosecution to testify against the defendant.[20] Common sense would suggest that he often has a greater interest in lying in favor of the prosecution rather than against it, especially if he is still awaiting his own trial or sentencing. To think that criminals will lie to save their fellows but not to obtain favors from the prosecu-

---

[20] See n. 5, *supra*.

tion for themselves is indeed to clothe the criminal class with more nobility than one might expect to find in the public at large. Moreover, under the Texas statutes the accused accomplice is no longer disqualified if he is acquitted at his own trial. Presumably, he would then be free to testify on behalf of his comrade, secure in the knowledge that he could incriminate himself as freely as he liked in his testimony, since he could not again be prosecuted for the same offense. The Texas law leaves him free to testify when he has a great incentive to perjury, and bars his testimony in situations where he has a lesser motive to lie.

We hold that the petitioner in this case was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense.[21] The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use. The judgment of conviction must be reversed.

*It is so ordered.*

MR. JUSTICE HARLAN, concurring in the result.

For reasons that I have stated in my concurring opinion in *Gideon* v. *Wainwright,* 372 U. S. 335, 349, and in my opinion concurring in the result in *Pointer* v. *Texas,*

---

[21] Nothing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination or the lawyer-client or husband-wife privileges, which are based on entirely different considerations from those underlying the common-law disqualifications for interest. Nor do we deal in this case with nonarbitrary state rules that disqualify as witnesses persons who, because of mental infirmity or infancy, are incapable of observing events or testifying about them.

380 U. S. 400, 408, and in my dissenting opinion in *Poe* v. *Ullman,* 367 U. S. 497, 539–545, I cannot accept the view that the Due Process Clause of the Fourteenth Amendment "incorporates," in its terms, the specific provisions of the Bill of Rights. In my view the Due Process Clause is not reducible to "a series of isolated points," but is rather "a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints . . . ." *Poe* v. *Ullman, supra,* at 543; see *Palko* v. *Connecticut,* 302 U. S. 319; *Klopfer* v. *North Carolina,* 386 U. S. 213, 226 (opinion concurring in the result).

I concur in the result in this case because I believe that the State may not constitutionally forbid the petitioner, a criminal defendant, from introducing on his own behalf the important testimony of one indicted in connection with the same offense, who would not, however, be barred from testifying if called by the prosecution. Texas has put forward no justification for this type of discrimination between the prosecution and the defense in the ability to call the same person as a witness, and I can think of none.

In my opinion this is not, then, really a problem of "compulsory process" at all, although the Court's incorporationist approach leads it to strain this constitutional provision to reach these peculiar statutes. Neither is it a situation in which the State has determined, as a matter of valid state evidentiary law, on the basis of general experience with a particular class of persons, as for example, the mentally incompetent[1] or those previously convicted of perjury,[2] that the pursuit of

---

[1] *E. g.,* Cal. Civ. Proc. Code § 1880, subd. 1; Cal. Pen. Code § 1321.

[2] *E. g.,* Vermont Stat. Ann., Tit. 12, § 1608. See generally 2 Wigmore, Evidence § 488 (3d ed. 1940).

truth is best served by an across-the-board disqualification as witnesses of persons of that class. Compare *Spencer* v. *Texas,* 385 U. S. 554. This is rather a case in which the State has recognized as relevant and competent the testimony of this type of witness, but has arbitrarily barred its use by the defendant. This, I think, the Due Process Clause forbids.

On this premise I concur in the reversal of the judgment of conviction.