PEOPLE *v.* STANLEY

1. SEARCHES AND SEIZURES—WITHOUT WARRANT—PROBABLE CAUSE—
   CRIMINAL LAW.
   Seizure of a gun, without a warrant, from defendant's automo-
      bile was lawful where the police, knowing that the killer
      of two persons had escaped in a pink and white station
      wagon, learned that defendant owned such a station wagon,
      and had had trouble with the victims, had probable cause
      to arrest defendant for murder and, as an incident to his
      lawful arrest, to search his car in an effort to locate the
      fatal gun.

2. SEARCHES AND SEIZURES—WITHOUT WARRANT—HARMLESS ERROR.
   Failure to suppress bags of ammunition seized by police with-
      out a warrant from defendant's automobile after it had been
      taken to the police station following his arrest for murder,
      was harmless error beyond a reasonable doubt where the
      police had already seized from him, as an incident to his
      lawful arrest, a loaded gun which a ballistics expert tes-
      tified was the gun used in the killings, because neither the

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 47 Am Jur, Searches and Seizures §§ 18, 19.
   Sufficiency of description in search warrant of automobile or
      other conveyance to be searched.  47 ALR2d 1444.
[3] 29 Am Jur 2d, Evidence §§ 542–554.
   Presumptions and burden of proof as to voluntariness of non-
      judicial confession.  38 ALR 111, supp 102 ALR 641.
[4] 41 Am Jur 2d, Indictments and Informations § 302.
   Defendant's plan to indictment or information as waiver of
      lack of preliminary examination.  116 ALR 550.
[5, 6] 30 Am Jur 2d, Evidence §§ 493–497, 1094.
[7] 21 Am Jur 2d, Criminal Law § 310.
   Right of defendant in criminal case to conduct defense in per-
      son, or to participate with counsel.  77 ALR2d 1233.
[8] 21 Am Jur 2d, Criminal Law §§ 345–348.
[9] 21 Am Jur 2d, Criminal Law §§ 222, 309–317.

seizure nor admission of the ammunition bags added much to the people's case inasmuch as defendant had in his possession, when arrested, the gun used in the murders.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—CONFESSION—VOLUNTARINESS—WITNESSES—FAILURE TO PRODUCE.

Prosecution's failure to produce as a witness at a hearing to determine the voluntariness of defendant's confession a detective who played a significant role in obtaining the confession, or to explain his nonproduction, requires remand for further findings where defendant contended that this detective had refused his demand for a lawyer, and if the detective cannot be produced, his deposition should be taken if possible and the admissibility of the confession redetermined, but if the interrogating detective's testimony is satisfactorily shown to be unavailable, defendant's conviction is to be deemed affirmed.

4. INDICTMENT AND INFORMATION—AMENDMENT—WAIVER—CRIMINAL LAW.

A defendant waives any right he might have to an examination on an amended information where he consents to the amendment and proceeds to trial without objecting that the amended information charges an offense distinct from the crime charged in the complaint and warrant upon which he was examined.

5. WITNESSES—CRIMINAL LAW—EVIDENCE—RELIANCE ON INFORMATION—HEARSAY.

A police officer may testify before a jury that, acting upon information, he did certain things, but he may not go further and testify as to precisely what he was told about the particular place or the particular person.

6. WITNESSES—CRIMINAL LAW—EVIDENCE—POLICE OFFICER—RELIANCE ON INFORMATION—HEARSAY.

Police officer's testimony that a slain couple's young son had replied affirmatively to the officer's questions whether he knew anyone with whom his parents had had trouble and whether he knew anyone who owned a pink station wagon, resulting in a police bulletin being issued for defendant as the man sought, although inadmissible did not require reversal of defendant's conviction where the jury already knew from other evidence that defendant owned and was arrested while driving a pink station wagon and that he had been having

trouble with the victims, and where defendant's confessional statements set forth in some detail the nature of the controversy.

7. EVIDENCE—CRIMINAL LAW—CROSS-EXAMINATION—DEFENDANT EXAMINING—INJECTION OF ERROR.

Injection of error by defendant, acting as his own counsel in cross-examining a prosecution witness, did not warrant a reversal of his conviction where defendant insisted that the witness answer his question as to why she informed police that she suspected defendant of killing the victims over the prosecutor's objection that the answer would be hearsay, and the witness responded that one of the victims had told her that defendant had threatened to kill her.

8. CONSTITUTIONAL LAW—CRIMINAL LAW—COMPULSORY PROCESS—ALIBI—ACCIDENT RECORDS.

Defendant's constitutional right to compulsory process was not violated by failure to obtain Dearborn police records of a three-car accident, which defendant asserted he was witnessing at the time that persons were murdered in Detroit, when the records could not be found, even if they existed, without information regarding the names of the persons involved in the accident, the make of the automobiles or their license numbers and defendant had none of this information.

9. CONSTITUTIONAL LAW—CRIMINAL LAW—ASSISTANCE OF COUNSEL.

Defendant was not deprived of the effective assistance of counsel where his trial was not a sham and he did not claim that his attorney made any major mistake during the trial.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 December 11, 1969, at Detroit. (Docket No. 5,656.) Decided October 2, 1970. Leave to appeal denied January 14, 1971. 384 Mich 796.

Clyde Stanley was convicted of first-degree murder. Defendant appeals. Remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*C. William Garratt,* for defendant.

Before: LESINSKI, C. J., and LEVIN and DANHOF, JJ.

PER CURIAM . The defendant, Clyde Stanley, was convicted by a jury of first-degree murder.[1] The principal issues on appeal concern the admissibility of evidence seized by the police and of a confession, whether Stanley was entitled to a second preliminary examination after the information was amended, and the admission into evidence of hearsay testimony. We affirm the conviction.

Shortly after 8 p.m. on Saturday, December 10, 1966, Raymond Trombley and his wife, Thelma, were shot to death as they left the Lafayette Clinic in Detroit where they had been visiting their 14-year-old son who was a patient. By 10:30 p.m. the Detroit police had interviewed a number of witnesses including the Trombley's son. Based on the information received a police bulletin was issued for Stanley's arrest.

The following morning, December 11, at 9 o'clock, Stanley was seen driving an automobile in Dearborn. Three police cars converged to effect his arrest. A police officer testified at the trial that immediately after Stanley stopped his car he raised his hands and shouted, "The gun is in the glove compartment". Stanley denied making the statement. He was arrested, the glove compartment was searched and a gun was found.

---

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

The trial judge did not err in denying Stanley's motion to suppress the seized gun. The police had learned that the killer escaped in a pink and white station wagon, that Stanley, a tenant of the Trombleys, owned a pink and white station wagon and that there had been controversy between Stanley and the Trombleys. In our opinion the police had probable cause to arrest Stanley. Thus, without regard to whether Stanley said that the gun was in the glove compartment, the police had the right, as an incident to his lawful arrest, to search the car in an effort to locate the fatal gun.

The automobile was removed from the scene of the arrest to the police station. During a further search bags of ammunition were found. Whether, having found the gun, a further warrantless search at the station house was justified, is a question[2] which we see no need to attempt to resolve. The gun, when seized, was loaded with six rounds of ammunition. A ballistics expert testified that it was the fatal gun. Neither the seizure nor admission into evidence of the bags of ammunition added much to the people's case. The damaging fact was that the defendant had in his possession at the time of his arrest the gun with which the Trombleys were killed. Moreover, the defendant, in his confessional statement to the police, admitted in evidence, said that he had purchased a gun of the kind seized and 50 rounds of ammunition on the day preceding the killing. We are convinced that if it was error to fail to suppress the bags of ammunition, it was harmless beyond a reasonable doubt.

Stanley was held by the Dearborn police for a few hours and then transported to the Detroit police headquarters where he arrived shortly before noon

---

[2] *Cf. Preston* v. *United States* (1964), 376 US 364, 367 (84 S Ct 881, 11 L Ed 2d 777); *Chambers* v. *Maroney* (1970), 399 US 42 (90 S Ct 1975, 26 L Ed 2d 419).

of the day he was apprehended. He was placed in two show-ups, one at 2:50 p.m., another at 4:50 p.m. The confessional statement was made the next day, Monday, at 10:30 a.m., and shortly thereafter he was arraigned on a murder warrant.

There was a *Walker*[3] hearing concerning the voluntariness of the statement. Stanley claimed he was harassed by the police throughout Sunday evening and that they interfered with his sleep. He also claimed that he was detained for an unreasonable period of time before he was arraigned and that his request for a lawyer was not honored.

We have examined the record on the voluntariness of the confession and find no reason to disturb the trial judge's rejection of Stanley's contention that he was so overwhelmed by police harassment between Sunday noon and the Monday morning interview, during which he confessed, that the confessional statement was not freely and voluntarily given. Nor do we find evidence justifying a conclusion that the detention was "used to coerce a confession".[4]

Stanley testified at the *Walker* hearing that during his first interview with a Detective Haines he asked to consult with an attorney and that his request was refused. Detective Carter testified that such a request was not made in his presence but Carter conceded that he was not in the room during the entire period that Haines and Stanley were together. Haines did not appear at the *Walker* hearing. It was said that he was in Mississippi. While neither the trial judge nor we are obliged to credit Stanley's assertion that he requested a lawyer merely because it is unrefuted, we think, having in mind that it is the people's burden to prove the voluntariness of a

---

[3] *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.
[4] *People* v. *Farmer* (1968), 380 Mich 198, 205.

challenged confession, that the people should have produced or explained the nonproduction of a witness who played as significant a role as did Detective Haines in obtaining Stanley's confession.[5]

In affirming Stanley's conviction we do so subject to a determination upon remand of whether Haines can now be produced. If it is claimed that he cannot be produced this should be satisfactorily explained, and, in such a case, it shall also be determined whether Haines' deposition can be taken. If his testimony is available it should be heard. Following his testimony the trial judge should make further findings and, if it is determined that a lawyer was demanded and refused, the admissibility of Stanley's confession shall be redetermined in the light of *Escobedo* v. *Illinois* (1964), 378 US 478, 490, 491 (84 S Ct 1758, 12 L Ed 2d 977). If it is satisfactorily shown that Haines' testimony is now unavailable, Stanley's conviction shall be deemed affirmed.

Stanley was arraigned upon a complaint and warrant which charged that he "feloniously, willfully and of his malice aforethought, did kill and murder one Thelma Trombley (Sec. 750.316, CL 1948)". Section 316 of the penal code defines first-degree murder as "all murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate and premeditated killing * * * ". After the conclusion of the preliminary examination, the prosecutor said, "Move the defendant be held for trial on the charge, first-degree murder". The magistrate responded, "The defendant is bound over as charged"; however, in his return of the examination the magistrate said that he bound Stanley over "for trial on the charge of: murder-first degree". The information was in the form of the complaint and warrant.

---

[5] See *People* v. *Drew* (1970), 26 Mich App 337.

At the commencement of the trial the prosecutor moved for leave to file an amended information to read, "feloniously, deliberately, willfully, and with malice aforethought, and with premeditation did kill and murder one Thelma Trombley". The defendant's lawyer responded that he had no objection. Now Stanley claims, for the first time, that he was entitled to an examination on the amended information. We think not; by consenting to the amendment of the information and by proceeding to trial without objecting to the amended information on the ground that it charged an offense distinct from that charged in the complaint and warrant and upon which he was examined, the defendant waived any right which he might have had to an examination on the amended information.

At the trial a police officer testified, over objection, that he asked Ramon Trombley, the young son of the victims, whether he knew anyone with whom his parents had had trouble and whether he knew anyone who owned a pink station wagon and that after receiving affirmative responses to both questions a police bulletin was issued naming Stanley as the man sought.

From the structure of the prosecutor's questions and the responses, the inference is plain that Ramon told the officer that Stanley was having trouble with his parents and owned a pink station wagon. No person qualified to be a juror could be so obtuse as to miss the prosecutor's point. In *Smith* v. *United States* (1939), 70 App DC 255, 256 (105 F2d 778, 779), the court observed:

"The rule seems to be that, while an officer may testify before a jury that, acting upon information, he did certain things, he may not go further and testify as to precisely what he was told about the particular place or the particular person."

Nevertheless, we do not think reversal on this point would be appropriate. The jury already knew from other evidence both that Stanley owned a pink station wagon and that he was having "trouble" with the Trombleys. He was arrested while driving a pink station wagon. His confessional statement sets forth in some detail the nature of the controversy.

Phyllis Brioc, a regular patron of Thelma Trombley's beauty shop, testified on direct examination that, while she was in the shop a short time before the murder, she observed Raymond and Thelma Trombley behaving in an extremely frightened manner and that upon hearing of Thelma's death on Sunday she immediately telephoned the police to tell them that she suspected Stanley. She was cross-examined by Stanley himself, who for much of the trial assumed his own defense *in propria persona*. He asked her why she telephone the police. She responded, "Because Jean had told me —". Before she could finish the sentence, the prosecutor objected that the answer would be hearsay. A colloquy ensued between the prosecutor and the judge, the prosecutor saying that he would yield if Stanley insisted upon an answer to the question. Stanley repeated the question and the witness responded, "because when Jean [Thelma Trombley] was setting my hair, she said to me, she said, 'you know, Clyde [Stanley] has threatened to kill me' ".

While special consideration may perhaps be justified where a defendant acts *in propria persona,* when the error complained of is injected by the defendant himself it can be only in the rarest of instances that reversal is justified. We are not persuaded it is warranted in the instant case.

Stanley maintained that he was innocent and asserted that at the time the shootings occurred

he was in the City of Dearborn witnessing a three-car automobile accident. The possibility of subpoenaing a police officer and the records of the Dearborn police department was raised several times. On the last occasion when the point was raised Stanley's attorney said that he had communicated with the Dearborn police department and was advised that in order to find a record of an automobile accident they need to be informed of the names of the parties involved, the make of the automobiles or the license numbers. Since none of this information was available, Stanley's attorney indicated that it would not be possible to obtain the records if they existed. Under the circumstances we do not think that Stanley's Sixth Amendment right, now applicable to the states through the Fourteenth Amendment,[6] to compulsory process was violated.

Lastly, we are satisfied that the defendant was not deprived of the effective assistance of counsel. His trial was not a "sham", it is not claimed that any major mistake was made by his attorney during the course of the trial.[7]

The other assignments of error do not merit discussion.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[6] See *Washington* v. *Texas* (1967), 388 US 14 (87 S Ct 1920, 18 L Ed 2d 1019).

[7] See *People* v. *Degraffenreid* (1969), 19 Mich App 702.