**Charles Dewayne FULLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38876.**

Court of Criminal Appeals of Texas.

Jan. 5, 1966.

———◆———

No attorney of record on appeal for appellant.

Henry Wade, Dist. Atty., Jim Miller, Jim Zimmermann and W. John Allison, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for murder; the punishment, fifty years.

This is a companion cause to Washington v. State, Tex.Cr.App., No.33,873, dated January 5, 1966, not yet reported.

Jean Carter, age 17, testified that she began dating Jackie Washington in 1962, and after her mother objected they continued, which was unknown to her mother, and their last date was August 26, but they talked by telephone about 4 P.M., August 29; that she first met the deceased about three weeks before his death August 30, and frequently dated him; that they were together Saturday night, August 29, and returned home about midnight, parking his car in the driveway; that after they ate, she and her mother were doing some housework while the deceased sat where he could be seen through the front door from the street; that about 2 A.M., August 30, they heard a noise and when the deceased went out on the porch he was shot; and they notified the police. The testimony of Jean's mother corroborates that of Jean as to the circumstances immediately surrounding the shooting.

A next-door neighbor of the Carters, Ruby Bynum, testified that about 5 P.M.,

August 29, she saw Jackie Washington knock on the front door of the Carter house, slam the screen and go to the side door where he got no response and slammed it and returned to the front door where he repeated his acts, and as he was going to the side door again she spoke to him and he left the premises; that during this time he had an open knife in his hand; and that night she heard a shot and someone running, and then saw a man lying on Carters' front porch.

The testimony further reveals that shortly after 11 P.M., August 29, Jackie Washington, in his car, began trying to locate a shotgun, and after several boys had joined him they met the appellant who let him have his shotgun, and with seven in the car including the appellant they drove by the Carter home and saw the deceased who Washington said, had been "messing with him" in the house, and they parked nearby. Washington told the boys to hit the car in the driveway with some bricks and "when the guy came out he would get it." Three of the boys threw bricks at the car and on returning to their car they heard a shot, and then Washington and appellant, who was carrying the gun, returned to the car. They soon separated with the appellant taking the gun with him.

In rebuttal the state introduced appellant's written statement which reads in part as follows:

"Jackie drove by a house on Warren Street and we saw a '64 car. Jackie said this was the stud's car that was messing with his girl. Jackie parked by a alley close to this house. We all got out of the car except Lorenzo and Little Man. I stayed with Jackie, and Joe Nathan Lawrence, Charles Ellis and Carl went on a few feet ahead. These three were supposed to throw rocks at this stud's car. They *throwed* the rocks and Jackie and *me* were behind some bushes. Jackie had given me the shotgun. A lady ran onto the porch, Jackie said, 'Don't shoot, that's the girl.' Then I saw a man run out of the house *to* on the porch. That's when I shot the gun one time. Jackie ran. I stood there because I heard the man holler. I got scared and ran back to the car. I put the shotgun up under the hood of Jackie's car again and Lorenzo drove off."

Testifying in his own behalf, the appellant stated that Jackie Washington said he wanted a shotgun to use to scare a man and he let him have his gun, and as they were passing a house Washington said he saw a man in the house watching television and they stopped nearby; that appellant told the three who got out of the car to hit the car in the driveway with some bricks, and "when he comes out I'm going to shoot the gun," and after he told Washington about a defect in the gun he (Washington) handed the gun to him; that after the bricks were thrown a lady came out on the porch, the lights came on and he shot toward the steps of the house, someone hollered and they ran back to their car; that he intended to pull the trigger but thought he had the gun pointed toward the steps; and that he never saw a man on the porch.

An independent finding was made by the court before the close of the evidence that the written statement of the appellant introduced in evidence by the state was voluntarily made.

The court charged the jury upon the law of principals and murder with and without malice, aggravated and simple assault, the voluntary nature of the confession and the suspension of sentence.

There are no formal bills of exception or objections to the court's charge, and the informal bills have been considered and reveal no error.

The evidence sufficiently shows that the death of the deceased was caused by the gunshot wound; and the evidence is sufficient to support the conviction.

The judgment is affirmed.

Opinion approved by the Court.