Jackie **WASHINGTON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 38873.

Court of Criminal Appeals of Texas.

Jan. 5, 1966.

Rehearing Denied Feb. 23, 1966.

Second Motion for Rehearing Denied March 30, 1966.

Charles W. Tessmer, Dallas (On Appeal Only), Emmett Colvin, Jr., Dallas (On Appeal Only), for appellant.

Henry Wade, Dist. Atty., Jim Zimmerman, Mike Everett and W. John Allison Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for murder; the punishment, fifty years.

This is a companion cause to Fuller v. State, Tex.Cr.App., 397 S.W.2d 434, dated January 5, 1966.

It is undisputed that the deceased was killed when he was shot with a shotgun about 2 A.M., Saturday, August 30th.

The testimony of the state reveals that on August 29, Jean Carter, age 17, lived with her mother and grandfather; that she had known the appellant, age 18, three or four years, and had previously dated him without the knowledge of her mother who had forbidden it; that she had known the deceased about three weeks before August 29, and had seen him during the last week except Tuesday night; that she went to see the appellant on Wednesday, August 26, at his grandmother's and they went to a friend's house, and then she returned home about noon; that she had visited him numerous times before at his grandmother's; that her mother left home about 1 P.M., and her grandfather about 4:30 P.M.; that the appellant telephoned about 4:30 P.M. and wanted her to meet him at the store nearby but she declined. Jean further testified that she telephoned the deceased about 6:30 P.M., and that they were together that night and returned home about midnight; that about 2 A.M. while she and her mother were doing some housework and the deceased was sitting in the house but visible from the outside, they heard some noise which caused the deceased to go out on the porch and then she heard a shot, and the deceased said he had been shot and the police were notified.

Mrs. Ruby Bynum testified that she was a next-door neighbor of Jean Carter, her mother and grandfather; that from her kitchen window about 4:30 P.M., August 29, she saw the appellant with an open

knife gripped in his hand go from the front porch of the Carter house to the side door, and when no one responded he returned to the front door and after getting no response he slammed the door and kicked the screen, and on returning to the side door repeated the same acts. She further testified that after a shot from a gun awoke her early Sunday, August 30, she saw a man lying on Carter's front porch and heard him cry for help.

The testimony further reflects that shortly after 11 P.M., August 29, the appellant, driving his car, began asking different persons at various places about a gun, and still unable to locate a gun, with several boys in the car, he said as they passed Carter's house where a 1964 yellow Impala was parked in the driveway that "if he had a gun he could blow him out of that chair"; later, appellant's inquiry of another person failed to locate a gun, and then he asked Charles Fuller who let him have a shotgun but he had no shells, and next he asked W. E. Thomas who gave him some shells, and Thomas joined the group which made seven in the car. After getting the shells the appellant drove directly to a place near the Carter house where he parked. Appellant handed two of the boys a brick while the other boy got one, and he told them to hit the car in the driveway, and when "that boy" came out he would shoot him. Two boys remained in the car, and appellant with the gun, Fuller next, followed by the three with the bricks went to the Carter house. After the three threw the bricks, and while returning to the car, they heard a shot, and shortly the appellant with Fuller carrying the gun returned and they drove away. Lorinzo Mabry, one of the two boys who remained in the car during the shooting testified that he heard the appellant tell his mother, "Yes, I shot him," referring to the deceased.

A physician, who examined the body of the deceased, testified that the projectiles from the shotgun pierced his lungs, the heart and stomach, and his death was caused by the gunshot wound.

The appellant, testifying in his own behalf, and other defense witnesses stated that Fuller was drunk, and while on the way from the car to the Carter house Fuller took the gun from him (appellant), and the other three boys ran toward the Carter house and threw the bricks, hitting the car in the driveway; that after Fuller approached the house he, appellant wanted to leave but that Fuller insisted that he was going to shoot somebody, and while running toward the car he (appellant) heard the gun discharge and a woman scream, but Fuller denied shooting a woman after he got to the car. A defense witness testified that appellant returned to the car first with Fuller close behind with the gun.

■ Appellant insists that the trial court erred in refusing his motion for new trial which alleged that the jurors heard discussions in the hallway of the courthouse before they were selected as jurors that his codefendant, Fuller, had been previously assessed fifty years; and that during their deliberation at least one juror said he heard that Fuller received fifty years.

In support of his motion the appellant called only juror Hoffman, the foreman. He testified that after he was selected but before the jury was completed he heard a juror say that Fuller got fifteen years; that during deliberation he heard a juror say that he had heard that Fuller got fifty years, and he (Hoffman) said he had heard something else, and he then said that it had no bearing on this case and never heard it mentioned again. The affidavits of two jurors were introduced by appellant; that of Gregory recited that he heard Fuller was convicted but no mention was made of the extent of the punishment assessed; and that of Blakeslee recited that after a remark that Fuller got fifty years the foreman advised that Fuller's penalty was immaterial and nothing further was said about it.

The state introduced the affidavits of five jurors which state that they never heard or that they never had any knowl-

edge of the punishment assessed Fuller; another affidavit states that the juror did not remember anything specifically that was said about Fuller's sentence, and two others state that they thought and another stated that Fuller got fifty years but when they were told it had no bearing it was not mentioned again. The state's affidavits of jurors Blakeslee and Gregory were introduced but appellant had already introduced those given to him.

There was testimony during the trial from several witnesses that Fuller had been previously tried. A statement was made before the jury by one of the attorneys that Fuller was "under conviction" for the same offense; and the law which permits the state to call Fuller, who is "under conviction," as a witness but that appellant could not, was discussed in the jury argument.

■ It is concluded that the trial court did not abuse its discretion in overruling the motion for new trial.

It is contended that the trial court erred in refusing his requested charge on the corroboration of accomplice testimony for the state and as to inculpatory statements of accomplices testifying for the appellant.

No exception was reserved to the court's action, therefore the refusal of the requested charge is not properly presented for review. Massiate v. State, Tex.Cr. App., 365 S.W.2d 802; Thomas v. State, Tex.Cr.App., 387 S.W.2d 665; Faulkner v. State, Tex.Cr.App., 390 S.W.2d 754.

The appellant contends that he was denied his constitutional right to have compulsory process for obtaining witnesses in his favor, namely, his co-defendant, Fuller, who had been previously convicted under a separate indictment for the same transaction.

■ The record shows that the appellant and Fuller were co-indictees for the same offense, and the court refused appellant's request to call Fuller as a witness following the state's objection thereto.

■ The legislature has the power, except as limited by the constitution, to prescribe the competency of witnesses in all cases.

The Arts. 711 Vernon's Ann.C.C.P. and 82, Vernon's Ann.P.C., have welded to them the severance statutes (Arts. 650, 651, 652, 653 and 654 C.C.P.) which provide the means and procedure for obtaining the testimony of accomplice witnesses. These statutes are procedural only, and do not deprive the accused of any constitutional right. No cases declaring Arts. 711 and 82, supra, unconstitutional are cited and we are aware of none.

The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the Court.

## ON APPELLANT'S SECOND MOTION FOR REHEARING

WOODLEY, Judge.

Appellant challenges the accuracy of our original opinion wherein we said: "The affidavits of two jurors were introduced by appellant; that of Gregory recited that he heard Fuller was convicted but no mention was made of the extent of the punishment assessed; * * *."

The affidavit referred to in the opinion was introduced in evidence as Defendant's Exhibit No. 2 and reads: "I was a member of the jury in Cause No. E–7925–K, styled The State of Texas v. Jackie Washington, in Criminal District Court No. 4 of Dallas County, Texas. Some time during the period which I was confined as a juror I recall a remark concerning the co-defendant's case, to the effect that he had been convicted. I recall no mention as to the number of years he was sentenced. This remark in no way effected my judgment as a juror."

Appellant directs our attention to the affidavit of the same juror (Gregory) which the state introduced as its Exhibit 13. It reads: "I was a member of the jury in the Jackie Washington murder case. I did not hear what punishment was assessed any other person who was connected with Washington in this case. I did not know what punishment was assessed any other such person and I arrived at my verdict without knowledge or consideration of what punishment any other person connected with the case may have received."

We remain convinced that under the record the trial judge did not abuse his discretion in overruling appellant's motion for new trial.

Appellant's second motion for rehearing is overruled.