Frank CAMARILLO, Jr., Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 3–680A162.

Court of Appeals of Indiana, Third District.

Sept. 29, 1980.

Timothy M. Bemis, Griffith, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Frank Camarillo was convicted of attempted robbery and sentenced to two years imprisonment. On appeal the defendant raises a single issue charging that the court erred in not permitting the defendant's expert medical witness to continue his testimony regarding the defendant's sanity and thereby violated the defendant's right to a fair trial.

The events giving rise to this charge began with the defendant's plea of not responsible by reason of insanity. The court appointed two psychiatrists to examine the defendant and determine his sanity at the time of the alleged crime. The defendant also retained a psychiatrist, Dr. Douglas Foster, to testify on the sanity issue. At trial the two court-appointed doctors testified and differed in their opinions of the defendant's sanity. The first doctor stated that in his opinion the defendant was sane at the time of the act charged. The second doctor testified that the defendant was suffering from a temporary mental disease and was unable to control his behavior at that time.

During the presentation of the defendant's case, Dr. Foster was called as the defendant's second witness and took the stand at approximately 4:00 in the afternoon. At that point the court stated that it did "not intend working past 4:30 on this case." Dr. Foster then testified that the defendant was suffering aggressive neurosis, chronic and severe, and did not act either intentionally or knowingly during the course of the alleged crime. The doctor

discussed the defendant's background and family life and explained various mental illnesses and conditions. He concluded that the defendant was insane at the time of the alleged criminal act. After this testimony the following exchange occurred:

"BY THE COURT: Why don't we permit cross examination at this point when [that is] the only issue that he's been called to testify to and then you can go back to re-direct if it goes over until tomorrow.

"BY MS. FERNANDEZ: (defense counsel) Well, your Honor, I'm going to object.[1]

"BY THE COURT: All right. (to the state) You may begin."

The State then cross-examined Dr. Foster until 4:30 P.M. when the proceedings were terminated for the day. The jury was dismissed and this dialogue took place:

"BY MS. FERNANDEZ: Your Honor, I would like to state that Dr. Foster cannot be here tomorrow morning.

"BY THE COURT: I expected that. That's why I suspended your direct examination, areas other than what he had been called to testify to. And that is the reason the State was given that right of cross examination, before we concluded proceedings for the day.

That is your choice, of course, not to have him recalled. I would suspect that the remedies available for that would be to strike his testimony entirely or let it go as it is right now."

The following morning, the State moved to strike the testimony of Dr. Foster. In denying that motion, the court reasoned,

"But I told you, you knew we are going to terminate as far as this case was concerned, we were going to terminate the evidence at 4:30 and you chose to go with the drug center guy first instead of the doctor which immediately rang a bell in my mind. Why is she doing that and then it got to be 4:15 and you were wondering [sic] off into an area outside of

---

1. Although this general objection is insufficient to preserve the issue on appeal, this Court will, nonetheless, address the merits of the alleged error.

the insanity issue. And I immediately thought if he does not come back today, the State will be affectively [sic] deprived of their right of cross examination.

"And it's at that point that I broke in on your direct examination for the purpose of giving the State at least as much time on cross examination as he was being given on direct examination in order to avoid striking out his testimony entirely. "I felt that this was the only remedy available to me. I wanted to avoid that if at all possible, keeping in mind that it's always difficult to strike anything from the minds of the jury, plus the fact we couldn't tell them[,] we could not tell the jury why his testimony was being stricken and whose fault it was. That has to be kept away from the jury."

And further:

"He was here at 2:30 and it was strategy on part of the defense as far as I could see that you called him late enough so that he could not be effectively or affectively cross examined. But I will not be part of strategy. I have to give a fair trial for both sides."

Based on these events, the defendant now contends that he was denied a fair trial.

The Fourteenth Amendment to the United States Constitution requires that no state shall deprive any person of life, liberty, and property without due process of law. The right to a fair trial guaranteed in the Sixth Amendment to the United States Constitution is also embodied and applied as to state court proceedings in the due process requirement of the Fourteenth Amendment.

*Gideon v. Wainwright* (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

*Powell v. State of Alabama* (1932) 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158.

■■ The Sixth Amendment right to a fair trial includes the right of a defendant to present a defense, including witnesses in his favor. *Washington v. Texas* (1967) 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019. The right of an accused in a criminal trial to due process is, in essence, the right to a fair

opportunity to defend against the State's accusations. *Chambers v. Mississippi* (1973) 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297.

■ In Indiana it is fundamental that the examination of witnesses is subject to the control of the court. Phases of the examination, such as the length and time that a witness shall be examined and the manner and mode of his examination are within the discretion of the trial court. *Sowders v. Murray et al.* (1972), 151 Ind. App. 518, 280 N.E.2d 630. The court has the authority to terminate the examination of a witness and direct that she stand aside. *Mulhollin v. The State* (1856) 7 Ind. 646.

■ The critical factor in this case is the control over the examination of witnesses, not the admissibility of evidence. The court clearly indicated the expert witness could be recalled to present additional testimony. When questioned by the court, the defense counsel stated that the witness would be available on the following afternoon, but counsel chose not to call him. This decision was freely made by the defendant and was not pursuant to any order or limitation by the court.

The actions of the trial court in this matter were designed to provide a fair and just trial. Trial court strategy which attempts to deny an opposing party the right to cross-examine a witness will not be condoned by this Court.

In the present case, if the defendant felt his rights were prejudiced by the denial of an opportunity to fully examine the witness, then the witness should have been recalled the following afternoon. If this could not be arranged, a continuance should have been requested. The defendant chose neither course of action.

No prejudicial error occurred and the judgment of the trial court is affirmed.

Affirmed.

GARRARD, P. J., concurs.

STATON, J., concurs in result.