■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LIBRADO ALVAREZ, Appellant. — Appeal from the judgment rendered December 12, 1980 in Supreme Court, Bronx County (Lawrence J. Tonetti, J., at *Mapp* hearing, plea and sentence), convicting defendant of criminal possession of a weapon in the third degree is held in abeyance, the order denying defendant's motion to suppress the gun is reversed, on the law and the facts, and the matter is remanded for a *de novo* suppression hearing. The arresting officers testified that when they first saw the car (in which defendant was a passenger) run a red light, they noticed the punched-out trunk lock and immediately radioed "central" to check the plate number. Allegedly a report came right back that the car had been reported stolen, so when the car came to a stop the officers approached with guns drawn. Pursuant to a subpoena requesting records of the radio run on the license plates, the police department produced a *former* radio

dispatcher who explained generally the computer system and record maintenance: although the original tapes of the requests for information on that date are not kept, the data is allegedly stored in the computer. The printout produced in court, however, revealed no request for a plate check coming in from a patrol car, but, rather, indicated that the information that the car was stolen came from the patrol car *to* central. Further, the time correlations for each of the entries regarding this incident place the arrest prior to the discovery that that car was stolen. However, the witness also testified that due to the volume of transactions, an outside request for a plate check would not necessarily be contained on the printout, although such information would still be filed in the computer. Obviously, whether or not a search of the computer could turn up such a radio run would be highly probative of the officers' credibility, and if in fact the police had no knowledge that the car was stolen prior to their approach of the vehicle, the gunpoint arrest was improper and suppression should have been granted. Therefore, the court erred in denying defendant's motion to compel the People to produce both the radio dispatcher on duty that night and the computer operator who searched for the information. Their testimony as to whether the disputed radio call was ever made or recorded, and whether such information is in fact retrievable, is highly material. Defendant has a right, assuming he is not dilatory, to call witnesses in the presentation of his defense and to use compulsory process to this end. (*Chambers v Mississippi,* 410 US 284; *Washington v Texas,* 388 US 14; *People v Cuevas,* 67 AD2d 219; *Singleton v Lefkowitz,* 583 F2d 618.) Defendant here demonstrated diligence and good faith (*People v Foy,* 32 NY2d 473), and we vacate the court's ruling on the motion and remand for a *de novo* hearing, at which time defendant may call such witnesses as may be appropriate to carry his burden of proving the illegality of the seizure in this case. (*People v Agosto,* 67 AD2d 624; *United States v White,* 324 F2d 814.) Concur — Carro, Asch, Fein and Alexander, JJ.

Sandler, J. P., concurs in a memorandum as follows: On February 1, 1980, at about 10:30 A.M., two police officers in an anticrime patrol car observed a vehicle run a red light. The trunk lock of the car had been punched out. The officers testified that they ran a license plate check with "central", which reported that the car had been listed as stolen, that they radioed for backup assistance, followed the car until it stopped, and then arrested the occupants of the vehicle. The issue presented is the legality of the arrest, which resulted in the finding of evidence sought to be suppressed. Let me state my emphatic agreement with the hearing court's judgment that the testimony of the police officers was highly credible, and that the alternative thesis advanced by the defendants was in the highest degree improbable. It is very difficult to accept that the two police officers believed solely on the basis of a punched-out trunk lock that they had the right to arrest the occupants of the vehicle, and that, without conducting the simple license plate check available to them, they radioed for backup assistance and undertook the arrest. Applying the normal criteria of common sense and human experience, the police account is far more believable than the alternative theory advanced on behalf of the defendants. I do not agree with the court's memorandum comment that "whether or not a search of the computer could turn up such a radio run would be highly probative of the officers' credibility". That comment implies an acceptance of the perfect operation of computer systems, and the infallibility of those operating such systems, that is not sustained by common experience. Nor do I believe that the hearing Judge was wrong in his view that the radio dispatcher on duty on the evening of the arrest was not likely to have relevant evidence to give. It does not seem to me reasonable to suggest that the failure of that dispatcher to recall many months later one of scores of communications that he

received on a particular evening, and that could have had no particular significance to him, would have a meaningful impact on the issue of credibility. On the other hand, I agree that the defendants were entitled to develop evidence that might tend to establish that the inability to retrieve from the computer evidence of the communication testified to by the police officers would have a legitimate bearing on the accuracy of their testimony. Accordingly, I concur in the result reached by the court.