**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No.  06-1321

KENYATTI JORDAN,

Petitioner, Appellant,

v.

THOMAS REILLY, Attorney General

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Torruella, Circuit Judge,

and Schwarzer,[*] Senior District Judge.

---

Robert L. Sheketoff, for appellant.
Maura D. McLaughlin, Assistant Attorney General,  with
whom Thomas F.  Reilly, Attorney General, was  on  brief, for
appellee.

---

November 14, 2006

---

[*]Of  the  Northern  District  of  California,  sitting  by
designation.

**SCHWARZER**, <u>Senior District Judge</u>.  Kenyatti Jordan appeals the denial of his habeas corpus petition.  In his petition, Jordan claimed that (1) incriminating statements he made to police were subject to a proffer agreement and therefore admitted in error or, in the alternative, were given involuntarily due to deception, and (2) the restrictions placed by the state trial court on his questioning of two witnesses violated his constitutional rights. The district court denied the petition; as Jordan has not shown that the state court's decision was contrary to or an unreasonable application of federal law, or based on an unreasonable determination of the facts, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On February 21, 1994, Joseph Dozier was shot and killed in Boston, Massachusetts.  Although police suspected that Kenyatti Jordan was involved in the shooting, they did not file any charges at that time.  In 1996, while on probation for unrelated crimes, Jordan worked as an informant for various state and federal agencies.  Due to unrelated arrests, Jordan was scheduled to have his probation revoked in early 1997.  In an effort to retain Jordan's assistance, federal agents contacted the state police and offered Jordan's aid in investigating the Dozier murder in exchange for intervention in the probation revocation hearing.

On January 9, 1997, a meeting was held at the United States Attorney's office in Boston.  The participants were Jordan, two

-2-

Boston police detectives, Herbert Spellman and Paul Joyce, two federal agents, Steve Mitchell and Domenic Colameta, and Assistant United States Attorney George Vien. Vien prepared a proffer letter for Jordan, which provided that the U.S. Attorney would not use any truthful statements that Jordan made against him but could conduct further investigation based on those statements. The Boston detectives did not say anything about the letter, and the state trial judge found that they believed the letter had no effect on state court proceedings.

The two detectives then took Jordan to a separate room to be interviewed, telling the federal agents that they could not participate. There, Detective Spellman told Jordan that there would be no promises about the interview, and that anything Jordan said would be relayed to the district attorney. Spellman then Mirandized Jordan, whereupon Jordan left the room to talk to the federal agents about the lack of immunity. Mitchell went into the interview room and spoke to Spellman, who told Mitchell that only the district attorney could grant immunity. Mitchell then left the room and told Jordan to go back in and tell the truth. On returning to the interview room, Jordan told Spellman that he had arrived at and fled the scene of the Dozier murder with Antonio Jones, who was another suspect in the Dozier murder, but that Jones had shot Dozier while Jordan remained far away.

During two subsequent interviews with the detectives, at each of which Jordan was given Miranda warnings, Jordan changed his story, admitting that he stood next to Jones during the shooting. Based on this admission and the observations of an eyewitness who saw two men stand side by side and both shoot Dozier, Jordan was arrested and charged with Dozier's murder.

Jordan moved to suppress all three sets of his statements to police, arguing that the proffer letter applied to the interview with the Boston detectives, or in the alternative, that because of deception on the part of the detectives, those statements were given under duress and involuntary. The trial judge denied the motion, finding, among other things, that the interview was non-custodial and non-coercive, that Jordan was fully aware of his Miranda rights, was alert and lucid, and knew the letter did not provide protection against the use in state court of anything he might say at the interview. The judge concluded that Jordan's statement to the detectives was a "product of his free will and rational intellect and was voluntary."

At trial, Jordan sought to demonstrate that the Boston and federal investigators acted purposefully to deceive him into making incriminating statements. During his cross-examination of Detective Spellman, Jordan asked, "[w]as it your concern that in the privacy of this meeting when you started to discuss Miranda issues that [the Federal agents] might object to Jordan's

testimony?" The prosecution objected to the question, and the trial court sustained the objection. On direct examination, Agent Mitchell testified about his conversation with the detectives regarding Jordan's lack of immunity. The prosecution objected, and the trial court struck the answer. A jury found Jordan guilty of first degree murder, based on premeditation and extreme atrocity or cruelty, and unlawful possession of a firearm.

On appeal, the Massachusetts Supreme Judicial Court (SJC) affirmed the conviction. It upheld the denial of the motion to suppress, holding that the trial judge's factual findings were supported by the evidence and consistent with prior case law. The court also found no abuse of discretion in the trial court's exclusion of testimony. The court held that the question posed to Spellman was cumulative and only marginally relevant, and that Jordan was able to extensively question Spellman regarding potential bias. Similarly, it held that Mitchell's testimony was cumulative regarding voluntariness, and the conversation in question was never relayed to Jordan.

Jordan then filed a petition for writ of habeas corpus in the district court. Though troubled by the facts, the court denied the petition in a careful and detailed ruling, concluding that while there were two plausible versions of the facts, the evidence was sufficient to affirm the version adopted by the state courts, from

which one could reasonably conclude that Jordan's waiver was made knowingly and voluntarily.

## LEGAL STANDARD

This court reviews a district court's denial of a petition for habeas corpus de novo. Obershaw v. Lanman, 453 F.3d 56, 59 (1st Cir. 2006), rehearing denied (1st Cir. July 26, 2006). Because Jordan's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, the district court was correct in applying that Act. Under AEDPA, a federal court can grant habeas relief only where a state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."

28 U.S.C. § 2254(d)(1)-(2). The state court's factual determinations are entitled to a presumption of correctness, which must be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Obershaw, 453 F.3d at 59.

## DISCUSSION

Jordan's principal argument is that the Boston detectives were bound by the proffer letter given by the federal prosecutor. The proffer agreement had been made before Detective Spellman

-6-

questioned Jordan. Jordan argues that, because states are bound by federal law, the federal prosecutor's promise of use immunity is binding on the state authorities. For support, he cites Murphy v. Waterfront Comm'n, 378 U.S. 52 (1964). Murphy held in substance that if a witness is given state immunity and compelled to give potentially incriminating testimony in state proceedings, he must likewise be immunized from use of that testimony in federal proceedings. Id. at 79. But Murphy gives no comfort to Jordan. Jordan was not under compulsion to testify in either jurisdiction. Thus his claim of being whipsawed is without substance. Even assuming an argument for extending Murphy could be made in this case, the standard of review contained in AEDPA makes this argument hopeless.

The second string to Jordan's bow is his contention that his statements to the detectives could not have been found to have been voluntarily made. That is because, according to Jordan, he reasonably believed that the assurance from the assistant United States attorney that anything he said could not be used against him carried over to his interview with the Boston detectives. But here his argument runs squarely into AEDPA. Under AEDPA, habeas relief is precluded unless the state court adjudication was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Moreover, a state court determination of factual issues "shall be

presumed to be correct" unless petitioner rebuts the "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Jordan has offered no evidence that the state court's determination was unreasonable, much less clear and convincing evidence that the court's factual finding of voluntariness was incorrect.

Finally, Jordan contends that he was denied due process when the trial court restricted his cross-examination of Detective Spellman, and struck one of Agent Mitchell's statements on direct examination.

The SJC held that the trial court's restriction of Spellman's cross examination was not error. Jordan argues that this holding is an unreasonable application of Supreme Court law as stated in Washington v. Texas, 388 U.S. 14 (1967). But this is not a case where the court's ruling "significantly undermined fundamental elements of the defendant's defense." United States v. Scheffer, 523 U.S. 303, 315 (1998) (citing Washington, 388 U.S. at 23), or barred all inquiry into an area of possible bias or motive. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Rather, as the SJC found, at trial Jordan was able to cross-examine Spellman extensively. The objection to a single question of doubtful relevance did not implicate Jordan's constitutional rights. See also Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) ("[T]he Confrontation Clause guarantees an opportunity for

-8-

effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

With respect to the Mitchell testimony, the SJC found that the statements at issue were not made in Jordan's presence or conveyed to him. Thus, they had no bearing on the voluntariness of Jordan's statements. The SJC determined that the trial judge did not abuse his discretion in striking the testimony, and Jordan has not demonstrated that his due process rights were violated.

**Affirmed**.