# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 7, 2012

## STATE OF TENNESSEE v. MICHAEL McVAY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-02031    Carolyn Wade Blackett, Judge**

---

**No. W2011-02511-CCA-R3-CD - Filed May 2, 2013**

---

A Shelby County jury convicted Defendant, Michael McVay, with rape of a child, aggravated sexual battery, rape, and sexual battery by an authority figure. The trial court sentenced Defendant to serve 25 years for rape of a child, 20 years for aggravated sexual battery, 20 years for rape, and 10 years for sexual battery by an authority figure. The trial court ordered all sentences to run consecutively, with a 100% release eligibility for the first three counts - child rape, aggravated sexual battery, and rape, and a 35% release eligibility for count four, sexual battery by an authority figure, for an effective sentence of 75 years in the Department of Correction. On appeal, Defendant presents the following issues: (1) the trial court erred by excluding evidence of the victim's sexual behavior; (2) the trial court erred by excluding evidence of the victim's prior complaint of sexual assault; and (3) the trial court erred by imposing an excessive sentence. Additionally, the State contends the trial court improperly sentenced Defendant on two of his four convictions. After thorough review, we affirm Defendant's convictions. However, the trial court's sentencing order is vacated in part and this case is remanded for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the**
**Criminal Court Affirmed in Part; Vacated in Part; Remanded in Part**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Michael McVay.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Amy P. Weirich, District Attorney General; Carrie Shelton, Assistant District Attorney General; and Brooks Yelverton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Background

In order to protect the identity of the victim, we will refer to her by initials, T.M. She was seventeen years old at the time of trial and Defendant was her step-grandfather. The evidence presented at trial, viewed in the light most favorable to the State, established that Defendant sexually abused T.M. over a span of five or six years, beginning when she was approximately eight or nine years old and ending in August 2008.

### *A. Pretrial Motion*

On the day of trial, the prosecutor moved the trial court to "prohibit the defense from asking any questions of the victim, [T.M.], about any type of sexual partner, sexual acts, anything related to any other incidents other than the incidents involving the Defendant." The prosecutor explained to the court that Defendant had not complied with the notice requirement of Tennessee Rule of Evidence 412 for admission of this evidence. Defense counsel responded that the testimony was necessary to present Defendant's theory of the case to the jury. Defense counsel argued that Defendant sought to prove that T.M. was having sex with neighborhood boys, that Defendant threatened to tell her mother about it, and that T.M.'s accusations against Defendant only came about after Defendant threatened to tell T.M's mother about her sexual activity. The trial court ruled in favor of the State. The trial court explained:

> [COURT]: [t]here is no official notice. The only thing I can say is that it would be–it would seem permissible by this Court that the facts came in that she had young men in the house, but anything that relates to any sexual matters or sexual conduct or anything like that would not be allowed, but if there was a number of people over there and her, you know attitudes, conduct, whatever was such that he told her he would tell her mother, then that is just a factual piece of evidence, but it has nothing, and it cannot have anything to do with sexual conduct.
>
> * * *
>
> But understand what I am saying. Based upon the rule that has been cited, anything about sexual conduct is not going to be permitted. You can set it up she was there or she was - or had a lot of boys there or whatever, but that does not lead to sexual misconduct.

*B. Trial*

*State's Proof*

At trial, T.M. testified she had known Defendant her entire life and considered him her grandfather. T.M. testified she moved to Memphis when she was eight years old and first lived with her paternal grandparents. Later, she moved with her mother into her maternal grandmother's and Defendant's home on Valleydale. She and her mother lived with her grandmother and Defendant off-and-on for approximately two to three years. During this time span, both T.M.'s mother and grandmother worked while Defendant was unemployed. Consequently, T.M. was regularly left solely under Defendant's supervision both before and after school at her grandparent's house.

T.M. testified that Defendant began touching her inappropriately when she was a fourth-grade student at Crump Elementary School when she was either eight or nine years old. When describing the first time Defendant touched her, T.M. testified he offered her "Hot Fries," or other candies and snacks sold by her grandmother to children in the neighborhood. Defendant asked her to accompany him to the bedroom he shared with her grandmother. T.M. testified that as she and Defendant sat on the bed together and watched television, he reached under her shirt and touched her breasts with his hands and grabbed the cheek of her buttocks from the outside of her pants. T.M. testified that she asked Defendant to stop, and she left her grandparents' bedroom, went back to her room, and shut the door. After this first incident, similar or nearly identical events occurred almost daily when Defendant stayed with T.M. She explained that when Defendant fondled her, he would give her either money or snacks. T.M. testified that she told no one about Defendant's touching because she thought that no one would believe her and also because he gave her money collected by her grandmother from sales of candy and other treats. T.M. testified Defendant's sexual abuse at the Valleydale address was limited to touching her breasts and buttocks.

After T.M. and her mother moved out of her grandparent's house on Valleydale and were living on their own, T.M.'s grandmother and Defendant also moved from the house to another home on Bryndale in Memphis. When T.M's mother worked a second job in the afternoon and evenings, T.M went over to that house to be watched by Defendant after school. T.M. testified that she was twelve years old and enrolled at Hickory Ridge Middle School the first time she performed oral sex on Defendant. She testified that while she was sitting on her grandmother's bed one day, Defendant approached her while touching his penis, asked her to perform oral sex on him, and told her to "suck on it for a little bit." T.M. said Defendant pushed her head down, and she began performing oral sex on him. T.M. testified that when she finished performing oral sex on Defendant, he masturbated and wiped

off his ejaculate with a bath towel. T.M. testified that after this incident Defendant gave her $20, and he forced her to perform oral sex on him in a similar fashion on another occasion after she had entered high school. She also described a single encounter where Defendant pulled down her pants and underwear and performed cunnilingus on her. Although she could not recall the exact amount, T.M. testified Defendant gave her money after he completed the act.

T.M. testified that on August 11, 2008, she and Defendant were alone at her grandparents' house. She testified that as she watched television in her grandparents' bedroom, he came into the room naked, except for a brown plastic "Kroger" grocery sack on his penis. T.M. testified that Defendant physically straddled her on the bed and began rubbing her breasts, and that while straddling her, he told her "if you let me stick it in four times, I'll give you $100." She testified that although she pushed Defendant away, he persisted and continued to offer her money for intercourse, stating "just let me stick it in once." T.M. testified that Defendant's penis touched her thigh while he was on top of her and that he unbuttoned her pants and pulled up her shirt. T.M. denied Defendant placed his penis inside of her vagina on August 11 or on any other occasion. She testified she remembered the exact date of this incident because it was her friend's birthday. Additionally, T.M. identified a mark particular to Defendant's body. T.M. testified that Defendant had a pigmentation "spot on his bottom lighter than" the rest of his skin.

A few weeks after the August 11 incident, T.M. conversed with her friend Tesharia Walls while the two girls washed dishes. T.M. testified that during this conversation, she began to cry and told Tesharia about Defendant's abuse. T.M. explained that the next conversation she had about Defendant's abuse occurred via text message with Tarshunia Walls, Tesharia's older sister. T.M. testified that Tarshunia Walls was living with her and her mother at the time. T.M. testified the two girls texted back and forth about the abuse and that Tarshunia Walls showed T.M.'s mother the text message conversation. T.M. testified that her mother, Monica Myart, spoke to T.M. about the text messages and that she told her mother about Defendant's abuse. Following the conversation with her mother, she and her mother reported the abuse to police.

Tesharia Walls testified that T.M. was one of her best friends and that she had known T.M. her entire life due to the close relationship between her mother, Tashonda Walls, and T.M.'s mother. Tesharia testified that she recalled T.M.'s confiding in her about Defendant's abuse while washing dishes in August 2008. She testified that on that day, T.M. told Monica Myart that she did not want to go over to her grandparent's house. Tesharia testified that while washing dishes, T.M. started crying and that she asked T.M to explain why she did not want to go to her grandparents and why she was so upset. Tesharia testified that T.M. told her, "my grandma's husband, he been touching on me and stuff . . . like he be raping me and

-4-

stuff," and "don't tell nobody because I don't want to start family issues, and I don't want people to think that I'm lying." Tesharia testified that a few days later she told her sister what T.M. had told her. A few days after that, she and her sister told their mother, Tashonda Walls, what T.M. had told her.

Tarshunia Walls testified that she lived with T.M. and Monica Myart in August 2008. Tarshunia testified that her sister, Tesharia Walls, talked to her about a secret that T.M. told her not to tell. Tarshunia testified that after talking to her sister, the two girls went to their mother, Tashonda Walls, and explained the accusations T.M. had made against Defendant. Tarshunia denied conversing with T.M about the accusations by text messages, and testified these conversations were always "face-to-face." Rather, Tarshunia testified, after speaking with her mother, her mother called T.M. and spoke to her about the allegations directly. Tarshunia further testified she spoke to T.M.'s mother the following Monday but merely provided her a hypothetical question about the ordeal, namely asking her, "What if I had this friend that went through these problems, what would you do?"

Tashonda Walls described T.M. as her "best friend's daughter." She testified she had known T.M. since birth and that her girls had grown up with T.M. Tashonda testified her daughters Tesharia and Tarshunia called her on the telephone and told her what T.M. had initially told Tesharia. Tashonda testified she immediately called T.M., spoke with her about the allegations, and that T.M. explained Defendant's sexual abuse in detail.

Monica Myart, T.M.'s mother, testified that she and T.M. moved to Memphis in August of 2002 when T.M. was eight years old. Monica testified that Defendant was her stepfather and that she and T.M. lived with her mother, Rochelle McVay, and Defendant on Valleydale and on Bryndale in Memphis off-and-on for a number of years. She testified that she regularly dropped T.M. off at her mother's and Defendant's home before T.M. attended school and that when she began working a second job, T.M. regularly spent the afternoons and evenings after school at the house alone with Defendant until 10:00 p.m. Monica testified that Tarshunia Walls first told her of T.M.'s allegations against Defendant but that she had already noticed that T.M. did not want to go over to Defendant's house to stay after school. She testified that after learning of T.M.'s accusations against Defendant, she spoke to T.M. about them but that T.M. did not explain the allegations in detail. Monica testified that after speaking to T.M., she took her to the police without having spoken to her mother or Defendant. On cross-examination, Monica testified that prior to T.M.'s allegations, Monica's mother called and told her that she could not bring T.M. to her house because T.M. was having visitors against the wishes of Monica's mother. Later Monica's mother called and said T.M. could stay with Defendant again. The State rested its case after Monica Myart's testimony.

*Defendant's Proof*

Defendant testified and also presented the testimony of Rochelle McVay. Rochelle, Defendant's wife and T.M.'s grandmother, testified that she and Defendant moved to Memphis in October 2003 and that her daughter, Monica Myart, and T.M. lived with her and Defendant for a period of time. She testified that she and her daughter worked different schedules and that T.M. stayed at her house alone with Defendant when both women were working. Rochelle testified that in July 2008, she stopped allowing T.M. to come to her house because Defendant told her T.M. was "keeping a driveway full of young guys." On cross-examination, Rochelle confirmed that Defendant and T.M. were at her house alone on August 11, 2008.

During his testimony, Defendant unequivocally denied T.M.'s accusations. Defendant testified that he had never touched T.M. "no kind of way" and that he was unaware of T.M.'s accusations against him until his arrest. He testified that before T.M.'s accusations, he threatened to tell T.M.'s mother about boys hanging around the house and that he had called his wife several times to complain about T.M. keeping boys in the driveway. Defendant testified that when T.M. was younger, T.M. was permitted to take snacks kept in the home so long as her mother paid for them. Additionally, Defendant gave T.M. money when she received good grades on her report card. As to T.M.'s ability to identify body markings particular to Defendant, he explained that T.M. saw him naked once when she burst into the bathroom while he was taking a shower at a time she and her mother lived with him and his wife.

## II. Analysis

In his first issue, Defendant asserts that the trial court erred by "refusing to allow testimony of [T.M.'s] sexual behavior with other young males" during the time period she was visiting Defendant. Defendant argued that the evidence was not offered to prove T.M.'s "propensity for prior sexual behavior" but was offered to prove T.M. had a motive to make accusations against Defendant because Defendant had complained about T.M.'s conduct with the boys. In his brief on appeal, Defendant combined his argument on his first issue with the argument on his second issue. The second issue asserts the trial court erred by prohibiting Defendant's counsel from asking T.M. on cross-examination whether she "had made a prior complaint against an unknown black male who allegedly made sexual advances (i.e. touching) toward [T.M.]."

Relying upon *State v. Brown*, 29 S.W.3d 427 (Tenn. 2000) and *State v. Flood*, 219 S.W.3d 307 (Tenn. 2007), Defendant argues that the trial court's refusal to allow Defendant to submit the challenged testimony violated his "absolute right to put on any and all proof

that is relevant and critical to his defense." After the jury had been selected and sworn, the trial court held a jury out hearing on the State's motion in limine for an order prohibiting the defense from eliciting testimony about T.M.'s sexual behavior with any person other than Defendant. The basis for the State's motion was that Defendant had not complied with the required procedures of Tennessee Rule of Evidence 412. Defendant did not contest the fact that he had not complied with the notice requirement of Rule 412(d). This rule requires the following procedure when a defendant desires to offer evidence of sexual behavior of a victim:

(d) Procedures – If a person accused of an offense covered by this rule intends to offer under subdivision (b) reputation or opinion evidence or under subdivision (c) specific instances of conduct of the victim, the following procedures apply:

(1)     The person must file a written motion to offer such evidence.

(i)      The motion shall be filed no later than ten days before the date on which the trial is scheduled to begin, except the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case.

(ii)     The motion shall be served on all parties, the prosecuting attorney, and the victim; service on the victim shall be made through the prosecuting attorney's office.

(iii)    The motion shall be accompanied by a written offer of proof, describing the specific evidence and the purpose for introducing it.

Tenn. R. Evid 412(d)(1)(i)-(iii).

During argument in the trial court, Defendant's counsel indicated that the defense wanted to elicit testimony from Defendant about T.M.'s sexual behavior with boys who came to Defendant's home. He argued that the State had notice of the evidence through part of Defendant's statement to law enforcement. Specifically, Defendant's counsel stated:

> I mean, to sum it up, they had [Defendant's] statement where they asked him specifically, "What do you think she would be telling" - - you know, "making up this story against you," and he, in his statement to the police officer, which is part of his statement, as to the effect that, "I told her that I would be telling - - 'I'll be telling your mother, you know, about whatever you're doing, you're having sexual acts, or your conduct in my house with these boys.'" [A]nd that is the heart and soul of this - - that's basically what this case is all about, not specifically the fact that she had - - that we go into detail, names, addresses and everything about the boys or anything else like that, but it's her conduct leading him - - the reason why that should go ahead and make these things up. That's all State's proof, and as far as notice is concerned, the State had the notice by the statement. They asked him specially why she would make it up. That's for the jury to determine.

The State announced that it did not intend to offer into evidence Defendant's statement to law enforcement officers. The trial court ruled that defense counsel could not elicit any testimony about the victim's sexual behavior with any persons other than Defendant because of the failure of Defendant to comply with the requirements of Rule 412. However, the trial court did allow Defendant's counsel to elicit testimony that T.M. had a motive to make false allegations against Defendant due to Defendant's complaints about inappropriate conduct by T.M., without mentioning any sexual behavior.

As to a defendant's right to present a defense, taken in context with procedural requirements for the presentation of evidence, our supreme court stated in *State v. Flood*, 219 S.W.3d 307 (Tenn. 2007),

> Exclusions of evidence may violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution even if the exclusions comply with rules of evidence. Principles of due process require that a defendant in a criminal trial have the right to present a defense and to offer testimony. *See Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *State v. Brown*, 29 S.W.3d 427, 431 (Tenn.

2000).  In *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) the United States Supreme Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.

388 U.S. at 19, 87 S.Ct. 1920.

> However, the right to offer testimony is not absolute: "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence . . . ." *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038.  Rules of procedure and evidence are designed to assure fairness and reliability in the criminal trial process.  *Id*.  So long as the rules of procedure and evidence are not applied arbitrarily or disproportionately to defeat the purposes they are designed to serve, these rules do not violate a defendant's right to present a defense.  *United States v. Schaeffer*, 523 U.S. 303, 308, 188 S.Ct. 1261, 140 L.Ed.2d 413 (1998); [ ] *see also Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 1731, 164 L.Ed.2d 503 (2006); *see e.g., Chambers*, 410 U.S. at 302, 93 S.Ct. 1038 (rejecting as "narrow and unrealstic" the evidentiary rule that did not allow defendant to impeach his own witness).

*Flood*, 219 S.W.3d at 315-16.

In this case we agree with the State's argument that testimony about T.M.'s sexual behavior was not critical to the Defendant's defense of the charges.  The State correctly points out that Defendant was allowed to present proof through T.M.'s mother that T.M. was not allowed to go to Defendant's house for a period of time because of problems with "some kids" coming over to Defendant's house.  Defendant's wife testified that Defendant complained to her about T.M. "keeping [Defendant's] driveway full of young guys."  Defendant testified that he told T.M. that he would tell her mother about the young men who kept coming to Defendant's home when T.M. was there.

Defendant also complains that the trial court erred by not allowing his counsel to cross-examine T.M. concerning her prior complaint (apparently about being sexually assaulted) against an "unknown black male" when she was in the seventh grade, concerning an event that occurred when she was seven years old. The State objected on the grounds that the evidence was inadmissible under Tennessee Rule of Evidence 412. Defense counsel represented to the trial court that the complaint was made to T.M.'s uncle, Ken. Defense counsel argued the relevance of the proposed testimony but did not directly argue against the basis of the State's objection. In his argument on appeal, however, Defendant asserts that the excluded proof would have been testimony of her complaint *against* her uncle concerning improper sexual activity. Defendant did not argue that T.M.'s purported prior complaint of sexual misconduct, whether *to* T.M.'s uncle or *about* T.M.'s uncle was a false complaint. Defendant argues the evidence would be admissible to attack T.M.'s credibility. Without some indication that the purported prior complaint was a *false* complaint, the relevancy in the trial is questionable. Accordingly, even if the trial court erred by excluding the testimony pursuant to Tennessee Rule of Evidence 412, the error would be harmless. Defendant is not entitled to relief on his first two issues.

In his last issue, Defendant challenges the sentences imposed by the trial court. Defendant was found guilty by the jury, as charged in the indictment, and was subsequently sentenced by the trial court as follows:

| Count 1 | Rape of a Child Class A felony | 25 years, Range I Standard Offender, Child Rapist 100% service of sentence |
| --- | --- | --- |
| Count 2 | Aggravated Sexual Battery Class B felony | 20 years, Range II Multiple Offender, Violent 100% service of sentence |
| Count 3 | Rape Class B felony | 20 years, Range II Multiple Offender, Violent 100% service of sentence |
| Count 4 | Sexual Battery by an Authority Figure, Class C felony | 10 years, Range II Multiple Offender |

All sentences were ordered to be served consecutively to each other, for a total effective sentence of 75 years. Each judgment ordered Defendant to be placed on the sexual offender registry and to be subjected to community supervision for life. While acknowledging that the trial court has the discretion to order consecutive sentencing when a defendant is convicted of two or more offenses which involve sexual abuse of a minor, Defendant fails to submit any argument as to how the trial court abused its discretion in ordering consecutive sentencing. Regarding the lengths of the individual sentences,

Defendant's sole argument is that the trial court "did not adequately weigh [ ] the mitigating circumstances as opposed to the enhancement circumstances." Defendant does not identify any mitigating factors which were not "weighed" appropriately. In fact, the trial court found no applicable mitigating factors. Defendant fails to list any mitigating factors which should have been applied by the trial court other than the following statement in his brief, the meaning of which is not clear:

> One of the most important factors that [Defendant] asserted in the [t]rial [c]ourt was due to the fact that there was no indication of any type of sexual convictions or any inappropriate contact with a minor.

As to the specific sentencing issue raised on appeal by Defendant, regarding sentences for the offenses in Counts 1 (rape of a child), Count 3 (rape) and Count 4 (sexual battery by an authority figure), all of which occurred after June 7, 2005, the effective date of when the General Assembly made significant amendments to the Tennessee Criminal Sentencing Reform Act of 1989, the following law clearly applies. In the 2005 amendments, the General Assembly rewrote Tennessee Code Annotated section 40-35-401 and deleted the language which had previously authorized a defendant to appeal the trial court's weighing of enhancement and mitigating factors. *See* Tenn. Code Ann. § 40-35-401(b)(2006). By doing so, "the General Assembly intended that a defendant may no longer allege as grounds for relief on appeal that the sentencing court erroneously weighed sentencing enhancement factors." *State v. Edward Charles Tennial*, No. W2006-00999-CCA-R3-CD, 2007 WL 2935625, at *3 (Tenn. Crim. App. Oct. 9, 2007). Accordingly, Defendant cannot be afforded relief on appeal for his argument that the trial court failed to properly weigh mitigating and/or enhancement factors.

As to the length of the sentences for the convictions in Counts 1, 3, and 4, our review must be in accordance with our supreme court's recent decision in *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). In *Bise*, the court concluded:

> In summary, the 2005 amendments to the 1989 Act were intended to bring our sentencing scheme in line with the decisions of the United States Supreme Court in this area. Accordingly, when the 2005 amendments vested the trial court with broad discretionary authority in the imposition of sentences, de novo appellate review and the "presumption of correctness" ceased to be relevant. Instead, sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness."

*Id.* at 708.  Accordingly, we now review a defendant's challenge to the sentence imposed by the trial court under an abuse of discretion standard with a "presumption of reasonableness."  *Id*.

Tennessee's Sentencing Act provides:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender.  In imposing a specific sentence within the range of punishment, the court shall consider, *but is not bound by*, the following advisory sentencing guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c)(1)-(2) (emphasis added).

In conducting a review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing.  T.C.A § 40-35-210(b); *see also State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

A trial court is mandated by the Sentencing Act to "impose a sentence within the range of punishment." T.C.A § 40-35-210(c).  A trial court, however, "is no longer required to begin with a presumptive sentence subject to increase and decrease on the basis of enhancement and mitigating factors." *Carter*, 254 S.W.3d at 346.  Therefore, an appellate court is "bound by a trial court's decision as to the length of the sentence imposed so long

as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id.

A trial court's "failure] to appropriately adjust" a sentence in light of applicable, but merely advisory, mitigating or enhancement factors, is no longer an appropriate issue for appellate review. *Id.*, 254 S.W.3d at 345 (citing *State v. Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007) (noting that "[t]he 2005 amendment [to the Sentencing Act] deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered the enhancement and mitigating factors merely advisory, not binding, on the trial courts"). In *Bise* the Court concluded:

> We hold, therefore, that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

*Bise*, 380 S.W.3d at 706.

Defendant does not contest the applicability of any advisory enhancement factors utilized by the trial court, and he does not assert that he was improperly sentenced as a Range II offender in Counts 3 and 4. The State, however, correctly points out in its brief that the trial court's written "Sentencing Findings of Fact" as to Count 1, rape of a child, indicates that the trial court set a sentence of 25 years, as mandated by statute (Tennessee Code Annotated section 39-13-522). The mandatory minimum sentence of 25 years for a rape of child conviction applies only to offenses which occur on or after July 1, 2007. T.C.A. § 39-13-522(b)(2)(A) (effective July 1, 2007). The offense in Count 1 occurred when T.M. was twelve years old, during the year of July 26, 2005 - July 25, 2006. Therefore, the mandatory minimum sentence provision could not apply. However, under *Bise*, the maximum Range I sentence of 25 years is justified.

However, as to the conviction in Count 2 for the offense of aggravated sexual battery, the proof showed and the State implicitly conceded in its "election of offenses" that the crime occurred when T.M. was eight or nine years old. T.M. was nine years old from July 26, 2002 through July 25, 2003. Without an executed waiver of his *ex post facto* rights, Defendant could not be sentenced for the offense in Count 2 under the Sentencing Act as amended in 2005. *See* Tenn. Code Ann. § 40-35-210. The conviction in Count 2 is affirmed but the sentence in Count 2 for aggravated sexual battery is vacated and the case is remanded for a new sentencing hearing in compliance with Tennessee Code Annotated section 40-35-210

and *Blakey v. Washington*, 542 U.S. 296 (2004). *See State v. James Albert Taylor*, No. E2007-02878-CCA-R3-CD, 2009 WL 396076, at *8 (Tenn. Crim. App. Feb. 17, 2009).

## CONCLUSION

The convictions and sentences in Counts 1, 3, and 4, and the order of consecutive sentencing in all counts are affirmed. The conviction in Count 2 is affirmed. The sentence in Count 2 is vacated and that count is remanded to the trial court for a new sentencing hearing in compliance with this opinion.

_____
THOMAS T. WOODALL, JUDGE